George H. Gray, Admr., *v.* Thomas D. Harris.

1. Administrator and Administrator de bonis non—Practice in Matters of Pro-
bate.—Where a record from the probate court shows that an administrator *de bonis
non* has been appointed, but does not show that the original administrator was
removed from or voluntarily resigned his office, the supreme court will presume that
the probate court acted upon proper and sufficient reasons in appointing the admin-
istrator *de bonis non.*

2. Administrator's Account—Practice.—Where an administrator has filed his
final account for settlement of his trust, and exceptions thereto are filed, the pro-
ceedings are in the nature of a suit between the parties, the progress of which each
must observe, at his peril; and the administrator will not be allowed to complain
that proceedings were had without notice to him. And if credits be disallowed on
evidence *aliunde*, the vouchers and testimony should be embodied in a bill of excep-
tions, that the appellate court may judge of its sufficiency.

3. Claims in Probate Court—Vouchers.—If a claim on its face, appear to be such
a debt or liability as is properly chargeable on the estate, and appear to have been
properly sworn to and allowed, the administrator will be protected in its payment,
unless the objector furnish sufficient proof to overthrow this *prima facie* case in the
administrator's favor. *Sed aliter*, if the voucher do not, on its face, import such a
debt or liability.

4. Power of the Court over Administrator's Account.—A probate court may itself audit and restate an account, or refer it to the clerk, or other fit person.

5. Confederate Money.—When a claim was to have been paid in Confederate currency, the court should apply the test of value at the date of the creation of the debt, rather than at the date when payment was to have been made. And the Confederate money should be reduced to the standard of U. S. currency, and not to th at of coin.

6. Balance Against Administrator, to whom Payable—Decree—Practice.—Balances found against administrators on final settlement, if for distribution, and if there be no creditor's claim thereon, should be decreed to be paid by the administrator to the distributees, and not to an administrator *de bonis non.*

Error to the probate court of Rankin county.

The plaintiff in error assigned the following errors :

1st. The court erred in hearing and passing upon the objections to the final account, in the absence of the administrator and his counsel, and without giving the administrator an opportunity to be heard and to show by proof that the objections were not well taken, and that the rejected items, if not supported by legal vouchers, were nevertheless just and legal claims against the estate.

2d. The court erred in ordering the account to be restated without notice to the administrator ; without referring it to auditors and permitting it to be restated by counsel for the objectors.

3d. The court erred in sustaining objections to vouchers which the administrator might have shown were valid claims against the estate, if he had had an opportunity to do so.

4th. It was error to pass upon the restated account, when there was no citation issued or served on the administrator, according to the order of the court.

5th. It was error to admit Mayers & Lowry to appear as attorneys for T. D. Harris, as administrator *de bonis non,* when he was not a party to the record ; and it does not appear that he was a party in interest—there being nothing in the record to show that the office of administrator had ever been vacated, or that T. D. Harris had ever been appointed.

6th. It was error to reject vouchers No. 2, 4, 6, 7, 8, 9, 10, 11, 12, 17, 18, 19, 20, 23, 24, 26, and 28.

7th. It was error to make a final decree against George H. Gray, admr., in favor of T. D. Harris, as administrator *de bonis*

*non*, who was entire stranger to the record and proceedings.

8th. It was error to refuse to allow the administrator any commissions.

*R. Cooper & U. Bourne*, for plaintiff in error.

It is submitted that the probate court did not proceed in a proper manner to hear and determine the final account, and the exceptions thereto. The action of the court was taken in the absence of the administrator and his counsel, without a day being set for the hearing, and when the administrator had no opportunity to be heard, and there was no proof in support of the account or of the objections. Under the statute, Rev. Code, p. 451, art. 107, it is clearly the duty of the court, not only to examine the final account filed, but also to hear the proofs in support of it, and the objections and proofs against it. And how can this be done unless the administrator be present, or at least have the opportunity of being present, and the privilege of introducing witnesses to prove the correctness of the several items in his account which were objected to.

The latter clause of the same article contemplates a full investigation. There was indeed no investigation of the account and objections in the manner contemplated by law. If the voucher filed in support of the charges were informal, or insufficient, it was a matter open to investigation, and proof might have been adduced to show that notwithstanding the voucher was insufficient, still the charge was a legal demand against the estate, and one which the administrator was justifiable in paying, and hence should be allowed.

In the case of Sims v. Sims, 30 Miss., 333, the rule of law prescribed is, " that if an executor or administrator pay a claim against his decedent, which is duly probated and allowed, *prima facie*, he is entitled to an allowance for it in his final account; but if he pay a claim not probated and allowed, *prima facie*, he acts in his own wrong, and he will not be entitled to an allowance for it, unless he establish by competent evidence before the court that the claim is just

and valid, and that it remained unpaid at the time it was paid by him."

It may be insisted that the administrator was in court from the time of the filing of his final account; but it will be observed that the process was not executed at the time appointed by the court for the hearing, and the case was continued for several terms, and no time was set for the hearing of which the administrator had any notice.

Of the other errors assigned, we will only notice a few. Among the numerous items in the final account which were rejected by the court without any proof on either side, but, we must conclude, for want of a sufficient voucher, was voucher No. 4. This was the written obligation of the decedent to pay T. P. Ware cotton to the value of $150. This was duly probated and registered. In regard to voucher No. 19, which was a medical bill against the decedent, with a certificate attached by the creditor, Dr. Baugh, that the charges were on a gold basis, and at old prices, the court arbitrarily assimilated the account to the value of Confederate money, and refused to allow the administrator what he actually paid. Vouchers 20 and 21, doctor's bills, should have been allowed. At all events, the grounds on which they were rejected, viz: that they were for Confederate money, is by no means tenable. There were several receipts for taxes, which were rejected. Such claims need not be protested, and the law requires no other voucher than the receipt. *Prima facie*, they were legal vouchers. Thomas D. Harris is no party in interest, as disclosed by the record.

There is one more error which we will refer to, and that is the refusal of the court to allow the administrator any commissions whatever. The statute provides, Rev. Code, p. 454, art. 109, latter clause, that the court shall also allow to the executor or administrator, as compensation for his trouble, either in partial or final settlements, not less than one, nor more than seven per cent. on the whole, on the amount of the estate administered. This vests the court with a discretion to allow a greater or less amount, within the limitation

prescribed.   Satterwhite v. Littlefield et ux., 13 S. & M., 302. The discretion of the probate court only extends to the allowance of commissions within the limitations prescribed by the statute.

*W. P. Harris*, for defendant in error.

There is no bill of exceptions, nor is the evidence or proof submitted in the record in any form, and hence the court will at once perceive that we are precluded from questioning the correctness of the court's action on the exceptions and vouchers, since we do not know what the proof was, and are bound by a well established and salutary rule to presume that the proof was sufficient to justify the action of the court below. Stubblefield v. McCraven.

Independently of this controlling circumstance the court will see from an inspection of the vouchers that all, with a few exceptions, would be rejected without proof, and the remainder were susceptible of being defeated by proof.   It is true that the probate of a claim is *prima facie* evidence, and will authorize payment, but it must, on its face, purport to be a legitimate claim against the estate.

The voucher 4, T. P. Ware's, the doctor's bills—made during the war—and the tax receipts, are those in regard to which the plaintiff in error says the court erred.   There is nothing to show that Ware's claim for cotton *had been paid* by the administrator, and the proof might have shown that it was not paid.   It would be a loose rule to allow administrators to settle by presenting probated notes or accounts with no evidence of payment by him.   The rejected tax receipts do not purport to be for taxes due from the estate. The one which does, on its face, show that it was for the estate, was allowed.   The doctor's bills were contracted in 1863, and the charges were the subject of proof and what was paid by the administrator.

The matter complained of in this connection is, that the administrator might have supported his vouchers by proof but had no opportunity to do so.   In this case it will be seen that a day was fixed in the first instance, and then again postponed to

the March term, 1867. Then there were regular continu-
ances. At the July term, 1867, it is true there is no state-
ment that he appeared by counsel, but the court must pre-
sume that he was present, or else absent without proper
excuse, as none appears. The statement in the record that
Mayers & Lowry appeared for the heirs and for the adminis-
trator *de bonis non*, and filed exceptions. to the account, is
proper, for it must always appear whenever proper parties con-
tested the account; but it cannot be assumed that the admin-
istrator was absent, because it is not recited that he was
present. There is no error in the mode of proceeding. The
court proceeded to hear the objections and proofs and ordered
a restatement of the account. This was strictly correct. The
court can, in any case of errors in accounts, order the clerk
to restate it, or the judge may himself restate it. Rev. Code
451; Satterwhite v. Littlefield, 13 S. & M., 302.

There are, however, two objections made in the assumption
that no state of proof would justify the action of the court.
1st. The disallowance of commissions asked for. 2d. That
the decree is to pay to the administrator *de bonis non*. The
109th art., Code 452, evidently contemplates a faithful
administration—at all events that there was meritorious man-
agement, but it would be to pervert the meaning " compen-
sation for his trouble," to allow compensation to an adminis-
trator removed for delinquency. What was the nature of the
proof on this point, or whether the administrator had pre-
viously obtained allowance on some annual account, we are
unable to say. The other objection, if well taken, may be
corrected here. This court pronouncing the judgment or
decree which the court below should have pronounced, in
favor of the proper parties, who appear by the record accord-
ing to the statute, art. 11, Code 563.

SIMRALL, J.:

George M. Gray, administrator of Richard Gray, deceased,
filed his final settlement account in the probate court of Ran-
kin county. Sundry exceptions were taken by the distrib-

utees of the estate, and the administrator *de bonis non.* These exceptions were continued from term to term, as it would seem, on the application of the administrator, until the July term, 1867, when a decree was made, disallowing sundry credits claimed by the administrator, and finding a balance against him of $6,516 97.

Whether the administrator had been displaced from his trust by the court, or whether he had voluntarily surrendered his office, the record is silent. Nor is the necessity of an administrator *de bonis non* shown. The duties of the latter would be limited to such assets as were left unadministered by his predecessor. It may, however, be presumed that a proper reason for his appointment was presented to the probate court.

It is complained in this court by Gray, the administrator, that the probate court took up and considered the exceptions to his account, restated it, and ascertained and determined the balance against him, in his absence, and without giving him notice. The proceeding of final settlement is in nature of a suit between the administrator and the parties interested in the estate. He must make the distributees parties by notice to them. It would follow then that when the parties are thus before the court, amenable to its jurisdiction, each must observe the progress of the suit at his peril. Certainly the administrator is presumptively in court from term to term, and cognizant of everything done. He cannot say that exceptions to his account were heard and decided without his notice or knowledge. If he desired further time to make proof of his credits, which were assailed by the exceptions, he should have craved it of the court, and have put on the record the merits of such an application.

The probate court may, in its discretion, order plenary proceedings; in practice the parties sometimes make them so without formal direction of the court. In such cases they assimilate very much to chancery pleadings and practice. We are inclined to the opinion, from a careful perusal of this record, that the only evidence which the court had before it

on the hearing of the exceptions and restating the account, was the account itself and the accompanying papers. Whether all or any of the objections to the credits of the administrator ought to have been sustained, depends on the value of the accompanying vouchers in support of the credits. If the voucher, on its face, is *prima facie*, a debt or liability of the intestate, or such as was properly chargeable on the estate, and the holder and claimant has made the appropriate affidavit, and the claim has been allowed, then the administrator will be protected in its payment, and allowed credit for it. The *onus* is on the objector to overthrow this *prima facie* case in favor of the administrator. Although the claim may be sworn to and allowed, yet, if on its face, it does not import a debt or liability on the estate, the administrator would not be justified in its payment, and would do so at his peril. The probate court can audit and restate the account itself. Satterwhite v. Littlefield 13 S. & M., 305, or it may be referred to the clerk or other fit person. Here there is no order of reference, and we must suppose that the court itself examined and restated the account. The exceptions so far as sustained in whole or in part, may be gathered from the decree and restated account, applying the above rules as tests of the exceptions :

1st. Credit (voucher) No. 2. It does not appear whether this payment was for the benefit of the estate or in exoneration of it. It would require further explanation by testimony.

2d. Fourth credit (voucher No. 4) is on its face the written promise of the intestate, and the administrator is entitled to a credit for it.

3d. It may be observed that the several successive receipts down to and including No. 12, are most probably payments or credits made the distributees for account of the distributable balance; and were such the fact, would be in exoneration *pro tanto*, of what may be severally due each on the distributive balance, but are out of place as stated and claimed in the account.

4th. Nineteenth credit (voucher No. 19).   If the services to A. S. Baugh were payable in Confederate money the probate court ought to have applied the test of value at the date of the rendition of the service rather than when the debt was to be paid.   This is the rule adopted by the supreme court of the United States, and which, we think is more agreeable to equity and justice.   The Confederate money ought to have been reduced to United States currency, and not to the coin standard.   As to this item there was error.

5th. The same remarks are applicable to credit and voucher 2.

6th. The administrator was not bound to pay claim (voucher) 20 ; it was not verified by oath, nor allowed, unless it be shown by other testimony that it was just, it is not a proper credit.

7th. The administrator is entitled to the credit, expressed in receipt (voucher) 23.   The receipt shows a payment of a debt against intestate, and it devolved on the objectors to show a different state of fact (if it really, existed).

8th. The administrator for the same reason, ought to have been credited with voucher 24.

We think the court erred in directing the balance found due from the administrator to the estate, to be paid over to the administrator *de bonis non ;* that portion of the decree is in these words :  " George H. Gray, former administrator, etc., is hereby ordered to pay said sum of $5,516  97 to Thomas Harris, administrator *de bonis non* of said estate for general distribution."   If the fund was for distribution, why should the court, not then have ordered its payment to the several distributees, rather than remit it to the hands of a successor, to be burdened with costs, commissions and delay, before reaching those for whom it was destined.   If creditors had no claims upon it, as is conceded by the decree, it is difficult to see for what good purpose it should be paid to Harris, administrator *de bonis non.*

The decree is reversed, the cause remanded, for the account of the administrator to be settled, according to the princi-

ples herein stated. Either party will be allowed to introduce testimony in support or derogation of the exceptions and account.