M.I. Levenson was appointed on April 23, 1935, as administrator of Baeza's estate, and duly qualified the next day. He gave notice of such appointment by publication in a proper newspaper as required by 1929 CompSt. § 47-123. The record shows that the notice was published in the Las Cruces Citizen, a weekly newspaper published in the town of Las Cruces, Dona Ana county, for four consecutive weeks, to wit, April 25th through May 16, 1935. The four-week publication is required by Laws 1931, c. 150, impliedly amending 1929 Comp.St. § 47-123, which only required publication for three weeks. The four weeks' requirement was first enacted by Laws 1912, c. 49, § 5, and carried into 1915 Code, as section 4647, and into 1929 Comp.St. as section 113-103.
On September 15, 1935, the appellee mailed to the probate court a claim against the estate for $727.01. A copy of this claim was mailed to the probate clerk, with instructions to serve the same on the appellant. The probate clerk did mail the copy to the administrator.
On June 30, 1936, there was regularly served on attorney for appellant, the following notice:
"To: W.C. Whatley, Attorney for Administrator.
"You will please take notice that the undersigned attorneys for the claimant, Pecos Mercantile Company, a corporation, will call up for hearing before the Hon. Juan Guerra, Judge of the above entitled Court, at his office in the County Court House of Dona Ana County, New Mexico, on the 6th day of July, 1936, at the hour of 10:00 o'clock A.M., of said day, the claim of J.L. Vance, agent of the Pecos Mercantile Company, a corporation, the same being the sum of $456.25, due on a certain promissory note bearing date of March 18, 1931, made, executed and delivered by the deceased, Hilario Ramos Baeza, to said Pecos Mercantile Company, a corporation and heretofore filed herein as a claim against the estate of said decedent; that if the attention of the Court *Page 710 
cannot be had at said time then said claim will be presented to the Court as soon thereafter as his attention may be had.
"Dated at Las Cruces, New Mexico, this 30th day of June, 1936.
 "[SGD.] R.C. Garland "J.H. Paxton "Attorneys for Claimant "Las Cruces, New Mexico."
On July 8, 1936, the claim was allowed by the judge of the probate court and ordered paid. An appeal was taken from this order to the district court in due time, and a hearing de novo was had before said court on March 1, 1937. The district court allowed the same, from which order of allowance this appeal is prosecuted.
Upon request of appellant, the trial court made the following findings of fact:
"I. That Hilario Ramos Baeza died intestate in Dona Ana County, New Mexico, on April 11, 1935, leaving an estate in Dona Ana County, and a large number of heirs.
"II. That on April 24, 1935, M.I. Levenson was appointed and duly qualified by the giving of necessary bond and the making of the usual oath of office as administrator of the estate of said Hilario Ramos Baeza, deceased.
"III. That on September 15, 1935, J.L. Vance, agent for Pecos Mercantile Company, filed a claim against said estate in the office of the Clerk of the probate court of Dona Ana County, New Mexico, the said claim being based upon a promissory note given by said decedent to the Pecos Mercantile Company, on March 18, 1931, for the principal sum of $456.25, bearing interest from its date at the rate of 10% per annum, and the same having been stated in detail, properly entitled, and sworn to, but not having been approved by the administrator.
"IV. That no notice of a hearing on said claim was filed in said probate court in said proceeding until June 30, 1936, and no hearing on the said claim was had until July 6, 1936, when in pursuance of the notice of hearing filed June 30, 1936, the probate court heard proof as to the validity of said claim and by his order of July 8, 1936, allowed the same and ordered it paid" — but refused to make the following conclusion of law as requested by appellant: "That said claim is barred, by reason of the failure of claimant to file in said court, within one year from the date of the appointment of said administrator, a notice of hearing thereon."
At the request of the appellee, the court made the following findings of fact and conclusions of law:
"The Court finds that the administrator of the estate of Hilario Ramos Baeza, deceased, wholly failed and neglected to publish notice to creditors in the Spanish language as by law required.
"Claimant's requested finding No. 2: The Court finds that the surnames of the decedent and all of his heirs at law, the same being his sole and only heirs, are Spanish names.
"Claimant's requested conclusion of law No. 1: As a matter of law the Court concludes *Page 711 
that no notice was given to creditors in the probating of this estate, in the Spanish language and that the same is necessary and essential to a proper administration of said estate, required by law; that by reason of the failure of the administrator to publish notice to creditors in the Spanish language the period for presenting claims against said estate has not lapsed and cannot lapse until such notice to creditors be published as by law required."
Proper objections and exceptions were made by both sides to the court's findings and conclusions.
In the final judgment the district court disallowed the appellee's claim for attorney's fees as provided by the note, which note is the foundation of appellee's claim, and only allowed the claim in the sum of $660.92.
The appellee did not object to the reduction in the trial court, though he does interpose an attempted cross-appeal in this court based on this point.
The appellant's claim in this court is to the effect that because no notice of hearing was given on the claim, as required by 1929 Comp.St. § 47-504, to the administrator within one year from the date of the appointment and qualification of such administrator, the claim was barred by virtue of 1929 Comp.St. § 47-505.
The appellee counters this assertion of appellant for the following reasons: "1. The claimant's notice to the administrator, and the service thereof, is to be tested according to the requirements and objects of the Procedure Statute, not of the Limitation Statute; 2. The claimant's notice to the administrator herein, and the service thereof, was sufficient according to the requirements and objects of the Procedure Statute, and therefore sufficient for all purposes; 3. The question of the sufficiency of such notice, and of the service thereof, is a question of first impression in this jurisdiction; and 4. The publication of the administrator's notice to creditors herein was not sufficient in law; and consequently no statutory year has been fixed for the filing of claims."
As to the first contention of appellee that 1929 Comp.St. § 47-505 is not in pari materia with 1929 Comp.St. § 47-504, we are not impressed. Section 47-505 is a statute of limitations unequivocally barring all claims against the estates of deceased persons, which are not filed and notice given in the manner provided by section 47-504. The statute of nonclaim was enacted to apprise the administrator and the probate judge of claims against the estate of decedents and to facilitate the closing of decedent's estates with safety. The statute is mandatory. We have so held. In re Landers' Estate, 34 N.M. 431, 283 P. 49, 50.
Section 47-504 specifically points out the path the claimant must travel if he would have his claim allowed. Section 47-505 advises him that the penalty for deviation from such path bars the claim. The two sections must be read together.
"Our statute says the claimant must file his claim and give notice of a proposed *Page 712 
hearing on it within the year. We have held that both of these requirements must be met. (Otherwise the claim is barred.) Buss v. Dye, 21 N.M. [146] 150, 153 P. 74." (Insertion in parenthesis ours.) In re Landers' Estate, supra.
We know of no plainer, clearer language than that used by Justice Simms in the Landers' Case interpreting the meaning of the two sections above referred to. This law and its interpretation by this court was in effect when the rights of the parties to this action were fixed. See subsequent amendments Laws 1933, c. 173 and Laws 1937, c. 136. The appellee cannot escape the plain meaning of the law as interpreted.
The second claim of appellee is in effect that there was a substantial compliance with the statute, in that a copy of the claim was sent to the administrator by the probate clerk, and which claim included the following:
"Wherefore be it prayed that a copy of this claim be served on M.I. Levenson, Administrator of the Estate of Hilario Ramos Baeza, Deceased, and that a date be set for hearing thereof, and that upon final hearing the said claim for $727.01 be approved, and costs of this hearing be allowed against the said estate of Hilario Ramos Baeza, deceased.
 "[Sgd] Fred C. Knollenberg, "415 Caples Bldg., "El Paso, Texas.
 "[Sgd] David J. Smith, "312 Caples Bldg., "El Paso, Texas. "Attorneys for Claimant."
We must announce an unsympathetic viewpoint. The statute is plain and unambiguous and is mandatory. Not even substantial compliance is here shown. 24 C.J. 364. In re Landers' Estate, supra. All that the administrator had in the instant case was a copy of the claim. The administrator had no notice that a date for hearing on the claim had been set or would be set. In the instant case, the five days' notice required by section 47-504 was not given until June 30, 1936. More than one year had elapsed from "the date of the appointment of the executor or administrator," and, no such notice having been given within one year, the same is barred. Section 47-505. Our statute specifically points out the result to follow noncompliance with its terms and the appellee must suffer for his departure from the designated path.
Appellee can find no comfort in the case of Brickley v. Spence,33 N.M. 248, 264 P. 959. True, the statute of nonclaim is not meant as a trap for the unwary, nor to be applied with unnecessary harshness or technicality. Yet in view of its purpose and character so often declared by this court, and in view of its plain mandate, we cannot mark off a path different than that outlined by the Legislature to accomplish its purpose.
We come now to appellee's claim, and finding of the trial court, that the notice to the creditors not having been published in the Spanish language as required by law, and that inasmuch as the surnames of the decedent and all his heirs at law are Spanish names, the period for presenting claims *Page 713 
against said estate had not lapsed and cannot lapse until such notice to creditors is published as required by law.
We are bound by the court's mixed finding of fact and conclusion of law as set forth hereinabove to the extent that no notice was given to creditors in the probating of this estate in the Spanish language, "as required by law."
From this we assume that there was evidence before the court that in Dona Ana county there is published a newspaper of general circulation, at least 30 per cent. of the reading matter of which is in the Spanish language. If that be true, and we must so assume from the court's finding, then the publication of the notice was not in compliance with Laws 1931, c. 150, § 3, which reads as follows: "Sec. 3. In counties wherein there is published a newspaper of general circulation, at least thirty per cent of the reading matter of which is in the Spanish language, publications referred to in Section 1 hereof, required by law to be made, shall likewise be published in the Spanish language in such newspaper; provided, in all legal proceedings wherein no named party to the record has a Spanish surname, publication in the Spanish language shall be unnecessary. In proceedings before the Probate Court, publication in Spanish shall not be required unless the decedent or some heir, devisee or legatee named in the petition for the appointment of an administrator or the probate of the Last Will and Testament of decedent shall have a Spanish surname."
Laws 1931, c. 150, requires such legal publications as are covered by said act to be published in Spanish as well as English, when the parties to the record, or in probate proceedings when the decedent, some heir, devisee, or legatee named in the petition for appointment of an administrator, or the probate of the last will and testament of decedent, shall have a Spanish surname, and when such proposed publication is to be had in a county wherein there is a newspaper of general circulation, at least 30 per cent. of the reading matter of which is in the Spanish language.
However, the appellee must hurdle a much more serious proposition. Does publication of the notice of appointment of an administrator, as provided by section 47-123, have any bearing whatever on the proposition here presented?
In other words, Would an absolute failure of publication of notice of appointment under the terms of the law at the time that the rights of the parties in this case were fixed, toll the time within which the statute of nonclaim would start to be computed for the purpose of barring claimants against the estates of decedents?
Comp.St. 1929, § 47-505, is as follows: "All claims against the estates of deceased persons not filed and notice given, as provided in the preceding section, within one year from the date of the appointment of the executor or administrator, shall be barred. No suit upon any claim shall be maintained unless the same be begun within *Page 714 
eighteen months after the date of such appointment."
This statute clearly bars all claims against the estates of deceased persons which have not been filed and notice given, as provided by section 47-504, within one year from the date of the appointment. This statute is silent respecting publication.
The period within which claims against an estate must be presented is fixed by statute. We cannot change that. The appellee, however, argues that the failure of the administrator to publish notice to the creditors as required by law is fatal, and that, in the absence of such publication, the administrator cannot invoke the statute of nonclaim.
We have held that neither the heir nor the administrator controls the statute of nonclaim.
"It was enacted to facilitate the closing of decedent's estate with safety, and contains no saving clause or discretionary provisions, such as are sometimes found in the statutes from other states." In re Landers' Estate, supra.
The time within which claims must be presented to the executor or administrator is governed by the statute of nonclaim and not the publication statute. Where a statute gives a remedy for the collection of claims against the estates of deceased persons, and fixes a time limit for their presentation to the court, it is generally held that such statute furnishes the exclusive remedy for the collection of such claims. 11 R.C.L. 212, § 235, Title, "Executors and Administrators."
"(§ 959) b. Computation of Time. Under some statutes the period within which claims against an estate must be presented runs from the time when letters testamentary or of administration are granted, not from the representative's advertisement or publication of notice. * * *" 24 C.J. 338. See cases cited in note 24 C.J. 338.
As to appellee's contention that failure to give notice in the manner provided by the statutes is fatal, and absent such proper notice the statute of nonclaim does not start in operation to bar the claim, we believe that may be true in those jurisdictions where the statutes tie the time of computing the period of limitation to either the publication of the notice or some incident thereto. Cases cited in support of the appellee's contention may be distinguished from those holding contra because of the difference in the statutes construed in those cases from the New Mexico statute in effect at the time the rights of the parties were fixed. We call attention to Laws 1937, c. 136.
For instance, the case of Brill v. Ide's Estate, 75 Wis. 113,43 N.W. 559, is cited by appellee to support his contention. The Wisconsin statute provided: That the "county court shall appoint convenient times and places when and where the court, or commissioners, will receive, * * * such claims, and within sixty days after granting letters testamentary * * * shall give notice of the time and places fixed for *Page 715 
that purpose, and of the time limited for creditors to present their claims, by causing a notice thereof to be published," etc. Rev. St. Wis. 1878, § 3839. It is obvious that unless such notice was given creditors would not know when or where to present their claims, and that a failure to give notice in such a case would relieve the creditor of the duty of filing.
Another case cited by appellee is Wilson v. Gregory,61 Mo. 421, which construes a statute of Missouri. The Missouri statute requires the administrator to publish, within a prescribed time, a notice which shall require claims to be exhibited for allowance within one year after the date of the letters testamentary, "and that if such claims be not exhibited within two years from the time of such publication, they shall be forever barred." The notice given in this case was for three years, instead of two, and the court held that this was not a compliance with the statute. There was no question as to whether the time ran from the date of the issuance of letters testamentary or from the date of publication, since the statute is clear on the subject.
The Oklahoma statute which is construed in State v. Soliss,66 Okla. 310, 152 P. 1114, cited by appellee in his brief, says that the notice shall require claims to be presented within four months from the date of said notice. It also prescribes the exact form for said notice, and the Soliss Case merely holds that the notice must be in that form to be valid. The court held that a material part was omitted and the notice was therefore void and did not start the statute of limitations, since the time runs from the date of the notice.
The statutes involved in the Montana case of Roche Valley Land Co. v. Barth, 67 Mont. 353, 215 P. 654, cited in support of appellee's contention, provide for notice by the executor or administrator, and say that such notice shall specify the place for presenting vouchers, etc., and that all claims must be presented within the time limited in the notice. Here, again, it is not surprising that the court held the statute must be strictly complied with, since without such compliance the claimant would be unable to ascertain when and where to file his claim.
The limitation and nonclaim statutes of Iowa also require filing of claims within twelve months from the giving of notice, and, in addition, that the notice of the administrator shall be such "as the court or clerk may direct." The case of McConaughy v. Wilsey, 115 Iowa 589, 88 N.W. 1101, although cited in this connection, merely holds that evidence of the fact of publication is insufficient to establish its regularity, in the absence of any showing that the publication made was pursuant to any order. Since the notice was held to be void and the statute runs from the time of notice, the claimant was not barred.
Thus, it is evident that each of the cases cited by appellee is based on a statute which expressly starts the running of the limitation period with the notice instead of with the qualification of the administrator, as does our statute.
Comp.St. 1929, § 47-505, is too clear to require argument to sustain its clear language *Page 716 
and import. There is nothing in our publication statute which indicates in the slightest degree that failure to publish tolls the statute of nonclaim.
In the instant case, the appellee cannot complain of insufficient notice. He filed his claim in due time, and his failure to give the notice required by section 47-504 is the cause of his dilemma and not the failure of appellant to publish a proper notice to creditors as found by the trial court.
For the reasons given the judgment of the district court will be reversed, the cause remanded, with directions to deny the claim of appellee and for appellant's costs.
It is so ordered.
HUDSPETH, C.J., and SADLER, BICKLEY, and BRICE, JJ., concur.