248 P.2d 671

FREI v. BROWNLEE.

No. 5526.

Supreme Court of New Mexico.

Nov. 5, 1952.

Hubert O. Robertson, Silver City, W. C. Whatley, LaFel E. Oman, W. B. Darden, Las Cruces, for appellant.

Bert E. Newland, Deming, Garland & Sanders, Las Cruces, for appellee.

PER CURIAM.

The opinion heretofore filed is withdrawn and the following is substituted therefore.

McGHEE, Justice.

This case arose out of an automobile accident which occurred on October 3, 1949, at about 7:40 p. m., at a point approximately twenty miles north of Deming, New Mexico, on U. S. Highway No. 260. The plaintiff, then of the age of five years, was riding with his family in an automobile driven by his father, Edward J. Frei, Sr. This automobile and one driven by the appellant's decedent, Roma Rea Brownlee, traveling in the opposite direction from the Frei automobile, collided in Frei's lane of travel after the Brownlee car struck a Dodge car parked partially on the pavement in the Brownlee lane of travel. The plaintiff was seriously injured and Mrs. Brownlee received injuries causing her death a few days thereafter.

The case was tried to a jury which returned a verdict awarding the plaintiff $3,500 for actual damages and $17,500 as compensatory damages.

The first question raised in this appeal is whether a party seeking to recover dam-

ages for a tort against an administrator or executor of a deceased tortfeasor must file his claim for the injury in the probate proceedings, and follow the procedure required of one asserting a debt on contract, as a condition precedent to the institution of an action against an executor or administrator in the district court.

The question is one of first impression in this court.

The statutes relative to filing and proving ordinary contract claims read:

"It shall be the duty of the probate judge to hear and determine claims against the estate. All such claims shall be stated in detail, sworn to and filed, and five (5) days' notice of the hearing thereof, accompanied by a copy of the claim, shall be served on the executor or administrator, unless the same have been approved by the executor or administrator, in which case they may be allowed by the judge without such notice." Sec. 33–802, N. M.S.A., 1941 Comp.

"All claims against the estates of deceased persons not filed and notice given, as provided in the preceding section, within six (6) months from the date of the first publication of notice of the appointment of the executor or administrator, shall be barred. * * * No suit upon any claim shall be maintained unless the same be begun within twelve (12) months after the date of first publication of said notice of such appointment. * * *" Sec. 33–803, N.M.S.A., 1941 Comp.

We have uniformly held claims based on contract must be filed in the probate proceeding, and that a copy of the claim with notice of hearing must be served on the executor or administrator within the time limited, or be forever barred. Our latest expression on the subject was in McBeath v. Champion, 1951, 55 N.M. 114, 227 P.2d 625, where we reaffirmed our former decisions, and stated compliance with such requirements was a prerequisite to the filing of a suit on such a claim. In so holding we were following the rule of Counts v. Woods, 1942, 46 N.M. 273, 127 P. 2d 398; In re Baeza's Estate, 1937, 41 N.M. 708, 73 P.2d 1351; In re Landers' Estate, 1929, 34 N.M. 431, 283 P. 49; and Buss v. Dye, 1915, 21 N.M. 146, 153 P. 74. In the Baeza and Counts cases, we stated [41 N. M. 708, 73 P.2d 1353]:

"The statute of nonclaim was enacted to apprise the administrator and the probate judge of claims against the estate of decedents and to facilitate the closing of decedent's estates with safety."

Admittedly, the plaintiff did not file a claim in the probate proceeding, although he did file his complaint in the district court a few days prior to the expiration of six

months from the date of the qualification of the executor.

■ Initially we must determine whether the probate courts in New Mexico have constitutional power to hear and determine tort claims. Article 6, Sec. 23 of our Constitution, so far as applicable, reads:

"A probate court is hereby established for each county, which shall be a court of record, and, until otherwise provided by law, shall have the same jurisdiction as is now exercised by the probate courts of the Territory of New Mexico. * * *"

Such jurisdiction is contained in Ch. 90, Sec. 48, Laws of 1889, which provides:

"The probate courts shall have exclusive original jurisdiction, in all of the following cases, to-wit:

"The probate of last wills and testaments; the granting letters testamentary and of administration and the repealing or the revocation of the same; the appointment and removal of administrators; the appointment and removal of guardians of orphans and persons of unsound mind; the binding out of apprentices; the settlement and allowance of accounts of executors, administrators and guardians; the hearing and determination of all controversies respecting wills, the right of executorship, administration and guardianship; the hearing and determination of all controversies respecting the duties, accounts and settlements of executors, administrators and guardians; the hearing and determination of all controversies between master and those bound to him; the hearing and determination of all controversies respecting any order, judgment or decree in such probate courts with reference to any of the foregoing matters of which the probate courts are herein given exclusive original jurisdiction; * * *."

Until the enactment of Ch. 79, Laws of 1941, following the rule of the common law, a cause of action against a tortfeasor for death by wrongful act was extinguished by the death of the tortfeasor before judgment was entered. Ickes v. Brimhall, 1938, 42 N.M. 412, 79 P.2d 942. Furthermore, notwithstanding L.1884, c. 5, Sec. 1, providing survivorship for certain tort actions against deceased tortfeasors as, for instance, for fraud or deceit, neither before nor since statehood when our Constitution was adopted is there a single reported instance of probate courts exercising jurisdiction to pass upon a tort claim. So how may it reasonably be claimed that when our Constitution was adopted in 1911 continuing in force the jurisdiction *theretofore exercised* by probate courts, under which proviso the only jurisdiction ever exercised as to claims was confined to allowing or rejecting those upon contract, express or implied, they

were given a jurisdiction never before exercised to pass upon tort claims?

We find a very similar constitutional provision regarding the jurisdiction of probate courts in Illinois. In the case of Howard v. Swift, 1934, 356 Ill. 80, 190 N.E. 102, 104, the Supreme Court of that state had before it the identical question we have here. There a claimant filed a tort claim in the probate court against the executors of a decedent, dividing it under four subheads. The claim was dismissed in the probate court as being beyond the jurisdiction of the probate court. Like action was had in the circuit court on appeal to it, and the Supreme Court affirmed such action. We quote from the opinion:

"The jurisdiction of the probate court is defined and restricted by section 20 of article 6 of the state Constitution. So far as applicable to this case, section 20 provides: 'Said courts, when established, shall have original jurisdiction of all probate matters, the settlement of estates of deceased persons,' etc. The probate court, by virtue of the Constitution, is therefore not a court of general jurisdiction, but its jurisdiction is circumscribed and restrained by the Constitution. * * * Such court has no general equitable jurisdiction but can only exercise equitable power within the zone conferred by the Constitution. * * *

"Probate courts created either by constitutional provisions similar to ours or by statutory enactment akin to our constitutional provisions exercise jurisdiction only over claims growing out of contracts either express or implied, and do not have jurisdiction of claims ex delicto. In re Locher's Estate, (219 Pa. 42, 67 A. 953); Comstock v. Matthews, 55 Minn. 111, 56 N.W. 583; Evans v. Hoyt, 153 Ark. 334, 240 S.W. 409; Ferrill's Adm'x v. Mooney's Ex'rs, 33 Tex. [219] 220; Feld v. Borodofski, 87 Miss. 727, 40 So. 816, 820; 11 R.C.L. 191. * * *

"The claimant also contends that the language employed in sections 60 and 70 of the Administration Act clearly comprehends the exhibiting in the probate court of all types of legal liabilities of the decedent, both ex contractu and ex delicto. In view of what we have heretofore said, if we are to give such sections the meaning urged by the claimant, such sections, in so far as they attempt to confer upon the probate court jurisdiction to hear and determine actions ex delicto, would be violative of section 20."

The statutes of Mississippi provide all claims against the estate of a deceased person, whether due or not, shall be registered, probated, and allowed within a given time; yet, the courts of that state hold the statutes refer to contractual claims only,

and not torts. The case of Boyd v. Applewhite, 1920, 121 Miss. 879, 84 So. 16, 25, arose on the following facts: The Kelley Banking Co. made excessive loans to one of its directors, Lowenberg. As a result the bank became insolvent. Lowenberg went into bankruptcy. Minority stockholders of the bank brought an action against the directors of the bank alleging mismanagement. The executrix of the estate of Lowenberg urged the action as against the estate of Lowenberg was barred because no claim had been probated. The court stated:

"It is next contended that the failure to register and probate the claim in the chancery court having jurisdiction of Lowenberg's estate within one year after the first publication of notice to creditors as provided by section 1775, Hemingway's Code, bars any action thereon. This question, we think, has been put at rest by previous adjudications of our court. Judge Calhoon, speaking for this court in Feld v. Borodofski, 87 Miss. 727, 40 So. 816, said:

" 'We do not think a claim for damages is one for probate against the estate of a deceased person, under Code 1892, § 1933. That section has reference to contractual claims, and not to those ex delicto. It must be such a claim as might be paid, if the estate were solvent, by an executor or administrator, and which, if bona fide and proper, would afford him protection.

Sumrall v. Sumrall, 24 Miss. 258. This could never be with an uncertain demand for damages for assault and battery. The claim to be probated must be one which, if paid by the executor or administrator, would, prima facie, entitle him to credit. Gray v. Harris, 43 Miss. 421. The terms of the statute fully sustain this, as does the reasoning of the court in Robinett v. Starling, 72 Miss. 652, 18 So. 421.' "

We are not unmindful of the strong opinion of Circuit Judge Bratton, sitting in the United States District Court of New Mexico, in Pinson v. Abbott, 1950, 93 F.Supp. 120 in which he reviewed our former decisions (all of which were in fact upon contractual claims) and held under the decisions of this court therein set out, and supported by cases from other jurisdictions, that the filing of a claim for tort and compliance with our statutes above quoted were prerequisite to the institution of an action for damages against an executor under our wrongful death statute. We are convinced the statements in our cases are correct, insofar as they apply to claims based on contract, but no consideration was given to tort claims in our decisions.

The appellant argues, in effect, that even if there was no cause of action against an administrator of a deceased person for tort at the time of the enactment of the 1889 Act defining the jurisdiction of the probate

courts, and the adoption of the Constitution, the statute requiring the filing of claims bided its time and when Ch. 79, Laws of 1941, became effective, the requirement for filing claims for torts, serving notice of hearing, etc., became as effective for tort claims as for those arising on contract. We find ourselves unable to agree with this contention. To so hold would, we believe, be conferring additional jurisdiction on the probate court by judicial fiat.

We conclude the statutes providing for the filing of claims in the probate court, the serving of a copy and a notice of hearing, and a presentment thereof to the probate court do not cover tort claims, and the trial court did not err in denying the motion to dismiss for failure to comply with the probate statute.

The Legislature may, if it desires uniformity in the time for filing claims in the probate court and that for suits against executors or administrators for torts of decedents, easily provide that the latter must be brought within six months from the appointment of the administrator or the qualification of the executor.

■ Another point made by the defendant is:

"The submission of a false issue to the jury in an instruction, by assuming a state of facts not shown in the evidence, is prejudicial error, and requires a reversal of the judgment."

Under this point he first complains of an instruction which defined contributory negligence. We agree with his contention that contributory negligence was not an issue in the case and there was no occasion to give the instruction. However, in view of the other instructions of the court it was harmless. Mares v. New Mexico Public Service Co., 1938, 42 N.M. 473, 82 P.2d 257. No mention was made of contributory negligence in the instructions except in the one in which it was defined.

■ The second instruction questioned under this point told the jury if it found the collision occurred on the decedent's wrong side of the road, the duty rested upon the defendant to explain the presence of her automobile on such side without her negligence. The defendant's exception to the instruction was, in effect, that the plaintiff's evidence showed affirmatively why the decedent's automobile was on the wrong side of the road, but he says nothing of the instruction injecting a false issue in the case. In his argument he says the testimony shows she was on such wrong side by reason of having struck the parked automobile and swerved to such side. Under Sec. 68–501, N.M.S.A., 1941 Comp., it was her duty to stay on her side unless the road on her left hand side was clear for at least fifty yards ahead, and when it was shown she was on the wrong side at the instant of the collision the burden was on the defendant to explain her presence there. Purdie v.

Brunswick, 1944, 20 Wash.2d 292, 146 P.2d 809; Foster v. Farra, 1926, 117 Or. 286, 243 P. 778.

■ It will be noted the defendant did not object to the giving of the instruction on the ground it introduced a false issue in the case, except inferentially. Counsel should have been more explicit in their objection and should have taken the court into their confidence. If the evidence on the subject was susceptible of but one construction, we are unable to see how the instruction prejudiced the defendant.

■ The third instruction questioned under this point told the jury if it found from the evidence that the decedent by her own conduct created an emergency, if it found there was one, or brought about a perilous situation through her own negligence, the defendant could not avoid liability for injury upon the ground the decedent's acts were done in the stress of emergency. This instruction was probably drawn from the case of Seele v. Purcell, 1941, 45 N.M. 176, 113 P.2d 320. We are of the opinion the instruction was called for under the evidence in the case. Without it the jury might well have believed that although the defendant's decedent was negligent in failing to keep a proper lookout for objects on the road ahead of her, and that she did not have her car under such control that she could stop within the range of her vision, still if she did not see the parked car until

it was too late for her to stop and avoid hitting it, yet she was acting in an emergency and therefore excused. We believe the instruction was called for by the evidence. Seele v. Purcell, supra; 1 Blashfield, Part 2, § 669, p. 547.

■ The next point made by the defendant is that the trial court erred in denying his requested instruction No. 11 on the question of unavoidable accident. It reads:

"You are instructed that there are many automobile accidents and collisions which occur without the fault or negligence of anyone, and which are said to have been unavoidable. If in this case you should believe that under the circumstances and in view of the conditions with which the parties were faced at the time it was not possible for them with the exercise of reasonable prudence, to have avoided what happened, then the collision of the automobiles was unavoidable, and there is no liability on the part of anyone."

He also complains of the second paragraph of instruction No. 34 given by the trial court. The entire instruction reads:

"You are charged that an unavoidable accident is a casualty which occurs without negligence of either party and when all means which common prudence suggests have been used to prevent it. Therefore, if you find from the evidence that the plaintiff received

the alleged injuries, if any, by reason of an unavoidable accident brought about as the direct, proximate result of unavoidable circumstances as here defined by the Court, you will find for the defendant.

"An unavoidable accident is defined to be an event happening unexpectedly from the uncontrollable operations of nature, without human agency. It is further defined and means an event that takes place without anyone's foresight or expectations; an event from an unknown cause; or an unusual or unexpected event from a known cause; a chance, or casualty; anything occurring unexpectedly or without known or assignable cause, or an event occurring without negligence. Whether an accident occurred does not depend on the exercise of reasonable care, nor is it prevented by the exercise of reasonable care."

The plaintiff objected to the giving of an instruction on the subject and the defendant now seeks to put the trial court in error because more examples of what constitute "unavoidable accident" are included in the instruction than were called for by the evidence.

We think the first paragraph of instruction 34 well took care of the defendant's position on the subject. It is true, as above indicated, the second paragraph of instruc-

tion 34 stated too many examples or gave too many definitions of unavoidable accident, but so many as were surplusage could only provide a field in which members of the jury might mentally visualize an unavoidable accident and thus be tempted to deny damages to the plaintiff on the ground of unavoidable accident. Even if the broad definitions contained in the last paragraph of instruction 34 were erroneous, such error was harmless.

Another point made by the defendant is that the trial court erred in failing to sustain his motions made at the close of the plaintiff's case and at the close of all of the evidence, because the proof failed to establish negligent conduct upon the part of the decedent which proximately caused or contributed to the injuries sustained.

This accident involved a three car collision. A Dodge automobile was parked at least partly on the blacktop or pavement headed in the direction the decedent was traveling. The plaintiff was riding in a car traveling on the right hand side of the road in the opposite direction from the decedent. The headlights on the Dodge were burning at the time of the accident, but it appears its tail light was not burning. The decedent drove her car into the rear of the Dodge and then across the road into the lane of travel of the Frei car and they collided. The defendant says in his brief on this point:

"The evidence is definite that the defendant's decedent did not undertake to avoid this parked automobile until she was from 75 feet to 25 feet from it. The only inference to be drawn therefrom is that she did not see it before that time."

We ask: Why not? The road was straight and level and there was nothing between her and the parked car. It was her duty to keep a lookout in her lane of travel for hazards on the road straight ahead. Olguin v. Thygesen, 1943, 47 N.M. 377, 143 P.2d 585. One who drives his car so rapidly on a highway at night that he cannot stop in time to avoid a collision within the range of his headlights, is generally negligent as a matter of law. Harrison v. Traveler's Mut. Casualty Co., 1943, 156 Kan. 492, 134 P.2d 681; Harris v. Hendrixson, 1941, 25 Tenn.App. 221, 155 S.W.2d 876; Redwelski v. Omaha & Council Bluffs Street Ry. Co., 1940, 137 Neb. 681, 290 N.W. 904. Indeed, the trial court instructed the jury in this case that the driver of an automobile must drive it in such a manner as to be able to bring it to a stop within the range of vision of his lights after dark, and the defendant has accepted the instruction. This is not a case where the defendant is liable only if the negligence of the decedent was the sole proximate cause of the collision and resulting injury. If her negligence concurred with that of the driver of the Frei car in causing the injury, the defendant is liable.

Due to the tender years of the injured plaintiff the question of his contributory negligence, of course, does not enter the case, and it is agreed the negligence of the father may not be imputed to the plaintiff.

We are of the opinion the trial court was correct in overruling the motions for a directed verdict and in submitting the case to the jury, and that the evidence is sufficient to sustain the verdict, except for modification of the award of damages made hereafter.

■ The defendant says the award of compensatory damages in the sum of $17,500 was excessive, and that he should be granted a new trial on account thereof, or we should require a substantial remittitur in the event we do not reverse the judgment on other grounds.

The evidence shows as a direct result of the accident the plaintiff suffered a severe head injury and that a craniotomy was performed and about three cubic centimeters of the right frontal lobe of the brain were removed. He suffered intense pain for two weeks following the accident, and then for two weeks after the operation. He has also suffered from headaches, but their frequency was diminishing at the time of the trial; he suffers from nervousness, has wire sutures in his scalp, a slight drooping of the right eyelid, and a slight weakness of the right face which is noticeable only to a trained eye. In addition, there hangs over

the boy the possibility or probability of epilepsy as a result of the accident. It is true the brain expert could not give an opinion as to the degree of disability which might result should epilepsy develop, and he stated the probability of epilepsy occurring would decrease with the passage of time. In view of the injuries inflicted and the threat of epilepsy, together with the decreased purchasing power of the dollar, we do not feel warranted in holding the damages are excessive. See the annotation in 16 A.L.R.2d 129 for cases where awards for brain injuries with possibility of epilepsy following ranging from $18,800 to $45,000 were upheld.

Another claim of error is made because of the admission in evidence of bills paid by the father for medical services, nursing, hospitalization, ambulance services and the bills of a chiropractor. These bills were introduced through the testimony of the father of the injured boy, who testified he had paid them. All except the bill of the chiropractor were admitted without objection, and it is too late for the defendant to urge the bills admitted without objection were not admissible in the absence of proof they were reasonably necessary as a result of the injury, and were reasonable in amount. Under the state of the record, he may question only the bill of the chiropractor. The objection to exhibit 14, the chiropractor's bill, reads:

"Mr. Whatley: I object to the introduction of these two checks which have been marked Exhibit No. 14 for the reason that they appear on their face to have been made to a chiropractor and there is no evidence to show that the services rendered were necessary to be rendered, that they had any relationship to the injuries the child received; that they were reasonable and necessary services or beneficial to or had any effect upon the treatment of the child for the head injuries he received. It appears from the testimony that the services were rendered subsequent to the time Dr. Jones had done the operation and released the child. The checks are therefore incompetent, irrelevant and immaterial."

The father thereupon testified he had paid the checks for treatment of the boy, and the trial court admitted them. The defendant then interposed the following exception and objection:

"Mr. Whatley: Exception. I want to make further objection that it is not shown that the amount charged was a reasonable and customary charge for the character of treatments and services rendered. Without that the exhibits have no foundation and they are inadmissible because they have not been properly identified and properly

founded. That in addition to the other grounds of the objection that it is not attempted to be shown that the services rendered by this chiropractor were necessary to be rendered."

We are of the opinion the objection to the exhibit evidencing the payment to the chiropractor should have been sustained and the exhibit excluded until it was shown the treatments were for a condition caused by injuries received in the wreck. Other grounds are stated in the objection on which there is a division of authority and which we do not find it necessary to decide. The amount of this bill was $725, and as the jury included it in the amount of actual damages allowed, $3,500, the verdict was excessive in such amount.

Including the $725 item, the total of the medical, nursing, ambulance and hospital bills amounted to $3,404.75, so, under our holding on the chiropractor bill, the verdict for actual damages was excessive in the amount of $820.25.

The judgment will be affirmed, conditioned on the plaintiff filing a remittitur with the Clerk of this Court in the amount indicated, $820.25, within the twenty days allowed for the filing of a motion for a rehearing. In the event of failure to so file such remittitur a new trial will be awarded. If such remittitur be filed, the costs of this appeal will be equally divided between the parties, otherwise they will all be assessed against the plaintiff.

It is so ordered.

LUJAN, C. J., and SADLER, COMPTON and COORS, JJ., concur.