Thomas L. WILSON, Administrator of the Estate of Mary Carolyn Singleton, deceased; Thomas L. Wilson, Administrator of the Estate of Joselyn Singleton, deceased; Thomas L. Wilson, Administrator of the Estate of Al Jerome Singleton, deceased; Thomas L. Wilson, Administrator of the Estate of Lilly Mae Clark, deceased; Thomas L. Wilson, Administrator of the Estate of Harriett Smith, deceased, Appellants,

v.

Cline BAILEY and Ralph J. Riley, Appellees.

No. 5792.

United States Court of Appeals
Tenth Circuit.

June 20, 1958.

Joseph L. Smith, Henry A. Kiker, Jr., Waldo Spiess and Oscar H. Beasley, Albuquerque, N. M., for appellants.

James R. Toulouse (of McAtee, Toulouse & Marchiondo), Albuquerque, N. M., for appellees.

Before MURRAH, PICKETT and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

After a jury had awarded judgments in separate and varying amounts to the administrator of the estates of five persons killed in a highway accident in New Mexico, the United States District Court for the District of New Mexico granted the motion of appellees, defendants below, for a directed verdict and in the alternative for a new trial. Such procedure is admittedly proper under Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A. Readnour v. Commercial Standard Ins. Co., 10 Cir., 253 F.2d 907. This appeal searches the substantive propriety of the two rulings.

On August 10, 1955, a Pontiac automobile owned and operated by Robert Singleton [1] and carrying the decedents as guest passengers, was traveling west on U. S. Highway 66 toward Albuquerque, New Mexico. Traveling in the opposite direction on the same two-lane highway was a huge Kenworth tractor to which was attached a refrigerated trailer carrying a full cargo of perishables. The tractor was being driven by appellee Riley as an employee of appellee Bailey. The two vehicles collided, the tractor-trailer literally running over the lighter car and killing instantly all six of the occupants. Riley and his relief driver were the only surviving witnesses to the tragic occurrence. Our inquiry as it pertains to the ruling for directed verdict must first determine whether the evidence was sufficient to support appellants' contention that the collision occurred at a point north of the center line of Highway 66 (and consequently in the proper lane of traffic for the Pontiac) and secondly whether the testimony of Riley and his relief driver as

to the events leading to the collision negative negligence upon the part of appellees as a matter of law and regardless of the position of the vehicles at the actual moment of impact.

A directed verdict is proper only in those cases where the evidence and all inferences to be drawn therefrom are so patent that the minds of reasonable men could not differ as to the conclusions to be drawn therefrom. Atchison, T. & S. F. Ry. Co. v. Simmons, 10 Cir., 153 F.2d 206; Long v. Union Pac. R. Co., 10 Cir., 192 F.2d 788. And even when the evidence is undisputed a directed verdict is not within the province of the court if different inferences may be reasonably drawn from such evidence. Readnour v. Commercial Standard Ins. Co., supra. In negligence cases the jury is quite commonly called upon to examine numerous circumstances each adding or detracting from the pattern of negligence, Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497, and it is for that body, under proper instruction from the court, to determine the weight and significance of each strand of evidence. Here the strands were numerous and complex as revealed by the physical evidence remaining after the collision. Both vehicles came to rest on the north shoulder of the highway with the Pontiac "squeezed down" under the tractor and carried some 184 feet from the vicinity of the original point of impact. Gouge marks upon the highway, attributed to the transmission housing of the Pontiac, originated and were completely contained on the north side of the highway. Quantities of oil were concentrated on that portion of the highway reserved for west-bound traffic. The existence of damage to the left front of the tractor and to the left side of the Pontiac (but not to the front bumper) may lead to the conclusion that the Pontiac was turning abruptly away at the moment of impact. Photographs, repre-

1. The jury rendered a verdict of no cause of action against the administrator of the estate of Robert Singleton and this por- tion of the judgment below has become final.

sentative of the scene after the accident had occurred, picture tire marks capable of being construed as indicating the course of the tractor both before and after the collision and, if so construed, showed the tractor to have been guided toward the north side of the highway. We believe the physical evidence capable of being so interpreted by reasonable minds as to place the point of impact upon that portion of the highway normally reserved for use by the west-bound automobile occupied by the decedents. Indeed, appellee Riley testified that at the moment of impact he was endeavoring to avoid the collision by making an abrupt and emergency turn to the left.

■■■ Under the law of New Mexico it is incumbent upon a driver who travels the wrong side of the highway to explain the presence of the vehicle on such side without his negligence. Frei v. Brownlee, 56 N.M. 677, 248 P.2d 671. The driver Riley testified that he observed the approaching Pontiac veer from its proper west-bound lane over to the south lane of traffic at a distance of three or four hundred feet; that the switch over was abrupt and that he, Riley, immediately began breaking; that his tractor was then traveling the extreme right-hand portion of the highway at about fifty miles per hour; that the Pontiac continued to come straight toward him and his relief driver stated: "My God he is asleep!" When the two vehicles were about fifty feet apart, Riley turned his tractor-trailer abruptly to the left in an attempt to avoid collision but the Pontiac was turned at about the same time to the right. The witness stated that the left front wheel of the truck was then approximately on the center line of the highway when the vehicles met. If such be a credible ver-

sion of the collision appellee may well be entitled to a verdict freeing him from liability or fault. And even if appellee be mistaken as to the location of the actual point of impact it would have been well within the province of the jury to find his conduct reasonable under all the circumstances of the emergency. But the verdict of the jury was otherwise and appellee's account was either rejected in part or in whole as to credibility. Such was the prerogative of the jury if in their considered opinion the physical evidence negatived any material portion of the account. The function of the jury is to explore the truth by reconciling apparent conflict through understanding and actual conflict by determining credibility. The jury's function cannot properly be negatived by directed verdict.[2]

■■■ But it does not follow that the court was in error in granting the alternate motion for a new trial. Houtz v. General Bonding & Ins. Co., 10 Cir., 235 F.2d 591. Such motion is directed to the sound discretion of the court and tests, within defined limits, the overall justice of the case result. Here the evidence of negligence upon the part of appellee is certainly not compelling and the trial court believed it to be but "slight". The verdict of the jury was for $20,000 for five deaths deemed compensable. The trial court noted such amount to be in no way compensatory if liability existed. A new trial may either free appellees of liability or justly compensate appellants. The trial court wisely exercised its recognized discretion in this regard.

The judgment upon directed verdict is set aside and the order granting a new trial is affirmed.

2. Appellants assert also that the jury's verdict may be upheld because it could properly have found appellee guilty of negligence on not keeping a proper lookout, driving at excessive speed, failing to sound a warning signal and failing to turn right instead of left at the point of emergency. The latter point is inherent in our opinion. The other assertions are without support in the record or were negatived by the jury's verdict against the driver of the Pontiac which verdict rejected the claim that appellee had the last clear chance.