J. C. PENNEY COMPANY, a corporation,
Appellant,

v.

Leonard O'DANIELL and Opal O'Daniell,
Husband and Wife, Appellees.

No. 5986.

United States Court of Appeals
Tenth Circuit.

Jan. 29, 1959.

Rehearing Denied March 31, 1959.

———◆———

Glenn H. Grubb, Oklahoma City, Okl. (Claude Monnet, Oklahoma City, Okl., on the brief), for appellant.

Leslie L. Conner, Oklahoma City, Okl., for appellees.

Before BRATTON, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

Plaintiffs brought this action to recover actual and punitive damages for the alleged false arrest and detention of the plaintiff Opal O'Daniell. Her husband, Leonard O'Daniell, sought relief for loss of consortium. The claims arose out of action taken by several of defendant's employees after they had been informed that a customer had seen a person, answering the description of the plaintiff Opal O'Daniell, surreptitiously take some merchandise in the store. In the course of its instructions, after a lengthy and somewhat argumentative discussion of the evidence and constitutional provisions for the protection of individuals, the court, on its own motion, instructed the jury that "the arrest made of the plaintiff was in no way in conformity with the constitution or the statutory requirements of the State of Oklahoma and was, therefore, an unlawful or a false arrest", and that a verdict should be returned in favor of the plaintiffs. The principal contention of the defendant is that the issue of probable cause for the false imprisonment and detention of the plaintiff was for the jury.

On December 9, 1957 the plaintiff Opal O'Daniell went to one of defendant's Oklahoma City stores to make some purchases. There was evidence to the effect that while she was in the store, another customer observed a woman handling some gowns which were displayed on the main and street-level floor of the store. The customer testified that she saw this person slip two gowns off the table on which they were displayed, and lower them below the top of it; that on each occasion she heard the rustling of a paper sack; and that she did not see the gowns returned to the table. She also testified that the woman appeared to observe that she was being watched and she hurriedly left the main floor, carrying a paper bag which looked like a large hat sack, and took an elevator to the upper part of the store. The witness reported the incident to the employee in charge of the gown department and gave her a detailed description of the suspect. This description and information was relayed to the store manager and he located a woman meeting this description on the second floor. As he approached, she glanced up and immediately went to the elevator and was taken to the main floor. As she left the elevator, the customer who had first reported her activities pointed her out to the saleslady. The woman walked hurriedly toward the front door of the building. One of defendant's clerks followed and, when some distance away, inquired if she could be of any help. The woman answered "No", and "kept going real fast" out of the store. The store manager, and floor manager Horn, saw the woman leave the store and followed her into the street. They momentarily lost sight of her in the Christmas shopping crowd but she was again located in a Woolworth store. As Horn walked toward her she turned and left through the front door and then went in and out of two other stores in rapid succession. As she was coming out of the last store, Horn was passing and when she saw him she stopped momentarily and went back into the store for an instant. From this store she was observed hurrying to a point where she could take a bus. Horn testified that this all took place within ten minutes, or less, from the time they left the Penney store. The police were notified and Horn entered the bus behind her and took a seat near the bus driver. The woman changed seats three different times and finally sat at the rear of the bus and "fished with the sack she was carrying". Within a few blocks a motorcycle policeman stopped the bus and asked the woman to come with him. Two more policemen and the store manager arrived and questioned the woman. A new, ladies' white flannel nightgown with a Penney label on it was found in her paper sack. She explained that the gown had been given to her as a Christmas present almost a year before and that she had intended

to exchange it at defendant's store but admitted she had made no inquiry about an exchange. She demanded that she be taken back to the store for the purpose of establishing her innocence. She accompanied the police officers in a squad car to the Penney store, where it was discovered that the particular type of garment found in her possession had not been on display. The person who was taken from the bus was the plaintiff Opal O'Daniell, the same person who had been previously identified in the store by the customer as the person who had taken the two gowns.

■ It is undisputed that the action taken by the manager and other employees of the defendant was for the purpose of protecting property belonging to the defendant. The law of Oklahoma is that probable cause is a defense in false imprisonment cases [1] where it appears that the alleged unlawful arrest and detention was done to protect the defendant's property. Swafford v. Vermillion, Okl., 261 P.2d 187; Title 22 Okl.Stat.Anno. §§ 1341, 1342. The test of probable cause is whether defendant had reasonable ground for believing, from facts he knew or should have known, that the person detained was engaged in the theft of his property. That is, the surrounding circumstances must be such that reasonable minded persons would conclude from them that probable cause for an imprisonment exists. Ordinarily, such questions are for the jury. Swafford v. Vermillion, supra.

■ A directed verdict is proper only in those cases where the evidence and all reasonable inferences to be drawn therefrom, are such that the minds of reasonable men can reach but on result.

Wilson v. Bailey, 10 Cir., 257 F.2d 352; Consolidated Gas & Equipment Co. of America v. Carver, 10 Cir., 257 F.2d 111; Millers' Nat. Ins. Co., Chicago, Ill. v. Wichita Flour Mills Co., 10 Cir., 257 F.2d 93; Readnour v. Commercial Standard Ins. Co., 10 Cir., 253 F.2d 907; Long v. Union Pacific R. Co., 10 Cir., 192 F.2d 788. Considering the evidence most favorably to the defendant, as we must when the verdict is directed against it, we think it quite clear that a jury could have concluded that the information which defendant's employees had, together with the actions of the plaintiff Opal in the store and after leaving it, furnished probable cause for believing that she had taken property belonging to the defendant. The fact that part of this information was not received by the direct observation of these employees would not justify the trial court in directing a verdict. The jury should have been allowed to determine what, if any, inference could be drawn from this fact.

■ Defendant complains of the court's instruction in defining the necessary basis for punitive damages. In view of a new trial, mention is made of the instruction. The court instructed the jury that if the "wrongs to the plaintiff were inflicted maliciously and wantonly, or with rudeness and indignity, then you may award the plaintiff, Opal O'Daniell, such damages as will not only compensate the plaintiff for the wrong and indignity as she has sustained in consequence of the defendant's wrongful acts, but you may also award exemplary or punitive damages as a punishment to the defendant for such acts." The theory of punitive damages is to punish the offender, and they are awarded for the general benefit of society. Tomlin-

---

1. In Mayo Hotel Company v. Cooper, Okl., 298 P.2d 443, 444–445, the court, quoting from the syllabus of S. H. Kress & Co. v. Bradshaw, 186 Okl. 588, 99 P.2d 508 said:

"* * * * '1. Any unlawful restraint of an individual's personal liberty or freedom of locomotion against his or her will constitutes false imprisonment. * *

"'3. False imprisonment may be accomplished without actual arrest, assault, or imprisonment, and may be committed by words alone or by acts alone, or by both.

"'4. All who by direct act or indirect procurement, personally participate in, or proximately cause, the false imprisonment or unlawful detention of another are liable therefor.' * * * *"

son v. Bailey, Okl., 289 P.2d 384. Punitive damages in tort actions are allowed upon proof of fraud, malice or oppression, but not upon proof of rudeness and indignity alone.[2] Fuller v. Neundorf, Okl., 293 P.2d 317. See also Title 23 Okl.Stat.Anno. § 9.

Judgment is reversed and the case remanded for a new trial.

2. The evidence from which punitive damages could be awarded was limited to the conduct of the store manager and other employees who followed the plaintiff Opal from the store. Opal testified that the store manager and the policemen were courteous to her at all times. She stated that the other employee, Horn, was unpleasant and sarcastic to her. A policeman testifying for the plaintiff, in referring to how she was treated, said that no one talked loudly to her and that "it was all being done in a very quiet way * * * "