Ross et al. v. Lewis et al., 23 N. M., 524.

---

(No. 2008, December 20, 1917.)

ROSS et al. v. LEWIS et al.

SYLLABUS BY THE COURT.

1. To constitute a "conversion" of personal property, there must be some repudiation of the owner's right, or some exercise of dominion over it inconsistent with such right, or some act done which has the effect of destroying or changing its character.    P. 526

2. The allowance of a claim against the estate of decedent is a judicial act, and has all the force and effect of a judgment; that is, it is final and conclusive, as between parties, until reversed or set aside, and cannot be attacked collaterally. So, also, the rejection of a claim by the probate court is final and has all the attributes of a judgment.

P. 529

Appeal from District Court, Socorro County, Mechem, Judge.

Action by R. C. Ross and P. A. Marcelino, as trustees for R. C. Ross and another, against Robert A. Lewis and another. Judgment for defendants, and plaintiffs appeal. Affirmed.

M. C. Spicer, of Socorro, for appellants.   J. G. Fitch, of Socorro, for appellees.

### STATEMENT OF FACTS.

This is an action for conversion.   The facts upon which the alleged conversion is predicated are, briefly, these: One B. R. Lewis, it is alleged, executed a bill of sale for two horses to the appellants to secure Ross and Hammond as sureties for said Lewis on a certain promissory note for $250, which said Lewis, Ross, and Hammond had executed in favor of the Bank of Magdalena during the latter part of the year 1911.   The bill of sale was dated December 23, 1911, and was recorded on July 10, 1912.   It appears, and was found by the court, that the said bill of sale was in fact a mortgage to indemnify the sureties on the note in favor of the Bank of Magdalena, and that the note in question was subsequently renewed by the parties on January 21, 1912.   On February 20, 1912, the said B. R. Lewis died intestate, and on March 21, 1912, the appellees were duly appointed administrators of his estate.   On March 4, and 8, 1912, the appellees received personal notice of the bill of sale held by appellants herein.   On or about November 4, 1912, and before the appellants, paid the $250 note, they presented their bill of sale in question to the probate court, with the request that they be protected as sureties on said note.   About July 1, 1912, the administrators, appellees, here, sold the horses mentioned in the bill of sale under an order of the probate court of Socorro county.   The appellant did not pay the note in question until the 30th day of June, 1915.   The court found that the appellants had a valid and subsisting lien on the horses described in the bill of sale at the time they were sold by appellees, but refused to find that the appellees had converted the property to their own use, or that the appellants were entitled to judgment as prayed in the complaint.

## OPINION OF THE COURT.*

HANNA, C. J. (after stating the facts as above).—
It is contended by appellants that it is not necessary, under section 2278, Code 1915, for the holder of a lien on personal property to present his claim of lien to the probate court in order to preserve his lien on the property of the deceased debtor; that for this reason the rule of this court announced in the case of Buss v. Dye, 21 N. M. 146, 153 Pac. 74, that all claims against the estate of deceased persons not filed in the probate court, and notice given as provided by law, within one year from the date of the appointment of the administrator, are barred, is not applicable; but that the general rule of law as laid down in 18 Cyc. p. 464, that a debtor whose claim is secured by mortgage, pledge, or any specific lien, need not present his claim, is applicable. Appellants cite Reid v. Sullivan, 20 Colo. 498, 39 Pac. 338, and other authorities in support of this contention. We have no quarrel with the proposition of law contended for, but question its application to the facts of this case.

[1] Appellants are seeking to hold appellees individually for an alleged conversion of certain horses which came into their possesson as admnistrators. The alleged act of conversion was the sale of the stock in question by the administrators under the order of the probate court. The only theory upon which the administrators could be held to be personally responsible to the plaintiffs in this case is that the plaintiffs before the sale in some manner charged the administrator with notice of their claim to the property in question. It is admitted that at the time of the sale of the property by the administrator the bill of sale had not been recorded. The actual notice, with which it is sought to charge the administrator, is predicated upon the testimony of the witness Hammond, who testified that the bill of sale was given to Ross and Marcelino by Lewis for two horses to secure the payment of a note signed by Lewis and indorsed by Hammond and Ross, in favor of the Bank of Magdalena; that he notified the administrators on the 4th of March, 1912, of the existence of the bill of sale. He further testified that he made a demand on

the administrators for the possession of the animals in question prior to the sale. It must be borne in mind, however, in this connection, that Hammond, was not a party to the bill of sale, although claiming an interest thereunder. It would further appear that the appellants at all times treated the instrument executed by Lewis as a bill of sale rather than a mortage until, by their reply in the present case, they admitted its character to be a mortgage Therefore, if the administrators were notified of anything, it was that the appellants had a bill of sale to property of which they never had acquired possession. The bill of sale furthermore bore a date different from the note, for which it was later alleged it was security, all of which facts and circumstances would, in our opinion, justify the administratrators in refusing possession of the property when demanded by Hammond. As property in the possession of the intestate at the time of his death, the administrators undoubtedly were required to take possession thereof and include it in an inventory of the property of the estate. This was done, and the administrators without charging themselves with liability on their bonds could not have parted with the possession of the property until a better title was set up and established. After the property had been sold by the administrator, appellants by an affidavit filed in the probate court set up that the bill of sale had been executed for the purpose of securing Ross and Hammond as sureties upon a note executed at the Bank of Magdalena and asking that they be protected as sureties thereon. The record is silent as to what, if any, action was had as to this matter. Appellants now contend that it was not a claim presented to the estate, although it apparently did ask for affirmative relief to the extent of payment either of the note, or of the claim of Marcelino and Hammond, who made the affidavit. The record is also silent as to whether a distribution of the assets of the estate had been ordered. Under such circumstances as these, can the appellants be heard in their contention that as holders of a mortgage they were justified in ignoring the proceedings

in the probate court, or by reason of the fact that the administrators had notice of their claim, they may now hold the administrators personally responsible upon the theory of conversion of the property? To make out a "conversion" there must be proof of the wrongful possession, or of the exercise of a dominion over it in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand. Fernald v. Chase, 37 Me. 291. In the case of Merz v. Croxen, 102 Minn. 69, 112 N. W. 890, it is said:

"To constitute a conversion of personal property, there must be some repudiation of the owner's right, or some exercise of dominion over it inconsistent with such right, or some act done which has the effect of destroying or changing its character."

Applying these principles to the facts of the present case, can it be said that the administrators have been guilty of conversion? Clearly they would not be if they came rightfully into possession of the property and continued so in possession until after the sale, which was ordered by the probate court. If they had any notice at all, it was notice of a bill of sale, not of a mortgage; and, as pointed out, this bill of sale was of questionable validity by reason of circumstances casting a doubt upon it. It is clear that they did not come into possession of the property wrongfully, and also that the intestate Lewis was in the possession of the property at the time of his death. The appellants predicate their right of possession, which they claim was denied, upon the bill of sale; but the instrument in question was not a bill of sale, as is now admitted by the pleadings. Under our statute the intestate was entitled to retain possession of the property if the instrument be treated as a mortgage, and therefore he was rightfully in possession of the property at the time of his death. The administrators consequently came into possession of the property rightfully, and so continued in possession until after the sale. We believe that this disposes of all elements of the case, and that an action for conversion could not be maintained, if dependent upon wrongful possession, which is the theory upon which the complaint is based.

This is unquestionably true unless the circumstances or conditions were changed by the presentation of the claim of appellants under their affidavit,. filed in the probate court some months after the sale of the property.

[2] First of all, appellants insist that no claim was presented and that the affidavit in question was simply for the purpose of bringing notice to the administrators for the purpose of fixing their liability. This is a misconception of the liability of the administrators, however, by reason of the fact that the administrators had sold the property, and the money derived from the sale was presumptively mingled with other assets of the estate, which may or may not have been distributed under order of the court. Assuming that the money had not been distributed, which the record does not disclose, it would clearly have been the duty of the appellants to ask for a segregation of the funds upon the ground of preference right in the matter of distribution, and there is some reason to suppose that this is what appellants were seeking when they presented a statement of the facts to the probate court. They state in their affidavit that they were liable as sureties on the note in favor of the bank, and that this note should be paid, and that they should be protected in the matter of their liability thereon. The court may have acted upon this affidavit and showing, and for reasons satisfactory to the probate court may have found that the appellants were not liable, or for numerous other reasons might have disallowed the claim. This court has not sufficient facts before it to pass upon the matter, and, if the probate court did pass upon the rights of appellants as presented by the affidavit, the action of the probate court would clearly become res adjudicata and not subject to review in this proceeding, which would be a collateral attack upon the action of the probate court. In this respect the rule is laid down in 2 Black on Judgments, § 641:

"But it is most generally the rule that the allowance of claim against the estate of a decedent is a judicial act, and has all the force and effect of a judgment; that is, it is final and conclusive, as between parties, until reversed or set aside, and cannot be attacked collaterally."

The author further says in the same section:

"So, also, the rejection of a claim by the probate court is final and has all the attributes of a judgment."

In this connection we are not unmindful of appellants' contention that they did not present a claim, but we must not lose sight of the facts of the case. The property alleged to have been mortgaged had been sold by the administrators rightfully in possession without notice of the existence of the mortgage. The proceeds of the sale had come into the hands of the administrators and presumably commingled with other funds. Those claiming to be mortgagees had directed the attention of the probate court in charge of the estate to the condition of affairs, and, if they did anything, they set up a preference right in the matter of the distribution of these funds. If this petition of the appellants was acted upon, it clearly was not subject to collateral attack, and we must presume that the probate court did act upon the matter, as all things must be presumed in favor of its judgment.

It is worthy of note, in connection with the foregoing, that the trial court found in its finding No. 3 that the note which it is alleged the bill of sale was given to secure was subsequently renewed "by all of said parties." In this the trial court was clearly in error, as the renewal note referred to by the witness Hammond, plaintiff's Exhibit B, was not executed by the intestate, B. R. Lewis, but was apparently indorsed as a note executed by Hammond and Ross "in lieu of the B. R. Lewis note." This fact or circumstance would be another suspicious circumstance tending to throw a doubt about the liability of the intestate as to the second or renewal note, which was executed 30 days before the death of Lewis, and on its face purports to be in lieu of the original Lewis note, which would tend to show that Lewis had been relieved from liability in connection with the transaction. Furthermore, if Hammond and Ross had paid the original note by their assumption of the renewal note, it might be urged that, if they had any claim at all, it was a mature claim against the estate of Lewis, which should have been presented to the estate, and,

failing so to present, the rule announced by this court in the case of Buss v. Dye, 21 N. M. 146, 153 Pac. 74, would be applicable.

For the reasons stated, the judgment of the district court is affirmed, and it is so ordered.

PARKER, J., being absent, did not participate.

ROBERTS, J. (concurring)—I agree that appellants were not entitled to recover. Their action was in trover for the conversion of two head of horses. The bill of sale, under which their rights arose, was in fact a mortgage, given to secure the appellants against loss as sureties. There was no breach of its conditions until after they had paid the debt, and, there being no stipulation to the contrary, the mortgagor, under section 571, Code 1915, was entitled to retain possession of the mortgaged property until the conditions of the mortgage had been broken. Kitchen v. Schuster, 14 N. M. 164, 89 Pac. 261. Appellants, although they might have done so, did not pay the debt, the payment of which they had secured, until after the estate had been settled. At the time possession of the property was demanded, the conditions of the mortgage had not been breached, and they were not entitled to possession. Neither were they entitled to possession at the time of the alleged conversion. This being true, an action in trover for the conversion of the property would not lie. In 38 Cyc. 2044, it is said:

"He who seeks to recover in trover must prove that he was in actual possession of the chattel converted at the time of the conversion, or that he had the right of immediate possession thereof."

Neither possession nor right of .possession being in appellants, at the time of the alleged conversion, they were properly denied relief.

For the foregoing reasons, I believe the judgment should be affirmed.