FIDELITY & DEPOSIT CO. OF MARYLAND v. HOBBS.

No. 2902.

Circuit Court of Appeals, Tenth Circuit.

Aug. 9, 1944.

J. M. Hervey, of Roswell, N. M., for appellant.

L. O. Fullen, of Roswell, N. M., for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

Emma Kipling died intestate on March 2, 1939. On March 7, 1939, Claude Hobbs was appointed administrator of her estate. He duly qualified as such administrator.

On March 7, 1939, Hobbs, as principal, and the Fidelity and Deposit Company of Maryland[1] executed the official bond of Hobbs as such administrator. The bond, in part, provided:

"Now if the administrator shall * * * administer according to law all the monies, goods, chattels, rights and credits of said deceased * * * which shall at any time come into the possession of the administrator * * * and shall pay any and all balances remaining in his hands upon the settlement of his accounts to such persons as said Probate Court or the law shall direct * * *, then this obligation shall be void; otherwise in full force and effect."

The application for the bond which was executed by Hobbs, in part, provided: "Second, to indemnify the Company against all loss, liability, costs, damages, attorneys' fees and expenses whatever, which the Company may sustain or incur by reason of" the execution of such bond.

On December 22, 1939, the Probate Court of Chaves County, New Mexico, entered an order discharging Hobbs as such administrator.

Hobbs died September 21, 1941, leaving a last will and testament under which all his estate, except a legacy of $2,500 to his daughter, Hulda Ruth Hobbs, passed to his surviving widow, Lois C. Hobbs. Lois C. Hobbs was appointed as executrix under the will. On June 26, 1942, an order of distribution was entered and Lois C. Hobbs was discharged as such executrix.

On February 6, 1943, Annie Sparks, Ruth Tyack Kipling, Rudyard Thomas Kipling, Irene Kipling Kimble, Mildred Emily Miller, Isabel Ortwein, Elizabeth Stephens, Annie Harryman, Mary Funderburk, William McLean, Margaret Schuster, and Alexander McLean[2] brought this action against the Fidelity Company to recover on the bond on account of certain funds of the estate which Hobbs, as administrator, had distributed to other persons and which plaintiffs claimed to be entitled to as heirs of Emma Kipling, deceased.

On February 6, 1943, the Fidelity Company filed in the action a third-party complaint against Lois C. Hobbs in which it sought recovery over against her in the event the plaintiffs in the main action recovered from the Fidelity Company on the bond.

On June 20, 1942, the Fidelity Company filed a claim against the estate of Claude Hobbs, deceased, in which it set up the execution of the administrator's bond by Hobbs as principal and it as surety, and further alleged that on June 19, 1942, the plaintiffs had made demand upon it as surety on the bond for the sum of $6,290.50, with six per cent interest from December 22, 1939, and had asserted that Hobbs, as administrator, had paid to certain other persons $6,290.50 of the funds of the estate of Emma Kipling, deceased, which was the property of plaintiffs, and had advised the Fidelity Company that unless it paid such demand, suit would be instituted against it therefor; and further alleged that such demands were based solely upon the liability of the Fidelity Company, as surety on such

---

[1] Hereinafter called the Fidelity Company.

[2] Hereinafter referred to as the plaintiffs.

bond, and that if the Fidelity Company should be required to pay such sum, Lois C. Hobbs, as executrix, would be liable to the Fidelity Company therefor. The Fidelity Company prayed that its claim for $6,290.50, together with interest, court costs, attorneys' fees, and other expenses that might be incurred, be approved, and that Lois C. Hobbs, as executrix, be required to pay into court for the benefit of the Fidelity Company a sum sufficient to cover such claim.

The probate court denied the claim on the ground that it was filed on June 20, 1942; that the first publication of notice to creditors was on November 6, 1941, and, therefore, the claim was barred by the New Mexico nonclaim statute.

The trial court entered a judgment against the Fidelity Company in favor of the plaintiffs in the main action and denied judgment over against Lois C. Hobbs on the third-party complaint. From the judgment denying it relief on its third-party complaint, the Fidelity Company has appealed.

■ The order of the probate court was not appealed from and became final. The allowance or rejection of a claim against the estate of a decedent is a judicial act, with the force and effect of a judgment, and it is final and· conclusive between the parties, until set aside, and cannot be attacked collaterally.[3]

Counsel for the Fidelity Company urges that the claim filed by it against the estate of Claude Hobbs, deceased, was based upon the common-law liability of the principal to indemnify his surety and that the claim upon which the third-party complaint is predicated is a contract liability arising from provisions of the application above quoted. What the Fidelity Company asserted was a claim for indemnity. It was incumbent upon it to set up all of the grounds on which such claim was predicated.

■■ In Vinson v. Graham, 10 Cir., 44 F.2d 772, 778, we said:

"A judgment or decree upon the merits concludes the parties and their privies as to all the media concludendi or grounds for asserting the right known when the suit was brought. * * *

"A party seeking to enforce a cause of action must present to the court, either by pleading or proof or both, all the grounds upon which such cause of action is predicated. He is not at liberty to split up his demand and prosecute it by piecemeal or to present a part of the grounds upon which such cause of action is founded and leave the rest to be presented in a subsequent suit if the first fails. * * *

"In United States v. California & O. Land Co. [192 U.S. 355, 24 S.Ct. 266, 48 L.Ed. 476], the United States sought to establish its title to certain lands and to have the patents for such lands declared void on the ground that such lands were within an Indian reservation and reserved from the operation of the grant. The Land Company pleaded in bar a final decree adverse to the United States in a former suit brought by the United States to establish its title, and to cancel such patents on the ground that the grant had been forfeited for non-compliance with the conditions of the grant. The court said:

" 'The best that can be said, * * * to distinguish the two suits, is that now the United States puts forward a new ground for its prayer. Formerly it sought to avoid the patents by way of forfeiture. Now it seeks the same conclusion by a different means,—that is to say, by evidence that the lands originally were excepted from the grant. But in this as in the former suit, it seeks to establish its own title to the fee.

" 'It may be the law in Scotland that a judgment is not a bar to a second attempt to reach the same result by a different medium concludendi. Phosphate Sewage Co. v. Molleson, 5 Ct.Sess.Cas. 4th Series, 1125, 1139; although in the same case on appeal Lord Blackburn seemed to doubt the proposition if the facts were known before. S.C.L.R. 4 App.Cas. 801, 820. But the whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his whole case at one time. He cannot even split up his claim (Fetter v. Beale, 1 Salk. 11; Trask v. Hartford & N. H. R. Co., 2 Allen [Mass.] 331; Freeman, Judgm. 4th Ed. §§ 238, 241); and, a fortiori, he cannot divide the grounds of recovery.'

"In Little v. Smith [47 Cal.App. 8, 189 P. 1059], it was held that the plaintiff, after a judgment had been rendered against him in a suit to set aside a deed on the ground of undue influence and fraud, could not maintain a second action to set aside such

---

[3] Ross v. Lewis, 23 N.M. 524, 169 P. 468, 470.

deed on the ground of mental incapacity of the grantor." [4]

■ We conclude that the judgment of the probate court is a bar to the claim asserted by the Fidelity Company in its third-party complaint.

Sec. 33-813, N.M.S.A.1941, provides that a debt of an estate not due, whether contingent or absolute, upon being presented shall, if absolute, be satisfied by the payment of such sum as the court or judge thereof may prescribe by order, to be equal to its present value, and if contingent, by the payment into court for the benefit of the creditor, subject to the contingency, of a sum to be ascertained in like manner, equal to the present value.

Sec. 33-803, N.M.S.A.1941, provides that all claims against the estates of deceased persons not filed within six months from the date of the first publication of notice of the appointment of the executor or administrator, shall be barred, and that no suit upon any claim shall be maintained unless the same be begun within twelve months after the date of the first publication of notice of appointment.

■ A claim is contingent where the liability depends upon some future event which may or may not occur, and which, therefore, makes it wholly uncertain whether there will be a liability. [5]

■ During his lifetime, Claude Hobbs breached the condition of the administrator's bond by paying out to other persons moneys which belonged to the plaintiffs as heirs of the estate of Emma Kipling, deceased. Thereupon, the Fidelity Company, as surety on the bond, became liable to the plaintiffs. In turn, Claude Hobbs became liable to the Fidelity Company, contingent upon the latter discharging its liability under the bond to the plaintiffs.

■ It is well settled that, when a contract of suretyship is made, there arises, in the absence of an express agreement, an implied contract that the principal will indemnify the surety for any payment the latter may make to the creditor in compliance with the contract of suretyship. This implied contract arises when the suretyship is made, and not when the payment is made by the surety thereunder. The relation of debtor and creditor exists between the principal and surety from the time the contract of suretyship is made. The payment relates back to the time when the contract was entered into by which the liability to pay was incurred, fixes the amount of damages for which the principal is liable to the surety and matures the cause of action therefor. [6]

■ The application obligated Claude Hobbs to indemnify the Fidelity Company against liability. That obligation arose when the bond was written. It accrued when the Fidelity Company became liable to the plaintiffs on the bond, that is, when Claude Hobbs breached the bond. It was as much a matured claim when the first notice to creditors in the Claude Hobbs estate was given on November 6, 1941, as it was when the third-party complaint was filed and the judgment below was rendered, because, when the latter of those three events occurred, the Fidelity Company had not yet paid its obligation under the bond to the plaintiffs.

■ It follows that the Fidelity Company had a contingent claim against Claude Hobbs during the latter's lifetime. It failed to file that claim against the estate of

---

[4] See, also, Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069; United States v. California & O. Land Co., 192 U.S. 355, 24 S.Ct. 266, 48 L.Ed. 476; Calaf v. Calaf, 232 U.S. 371, 34 S.Ct. 411, 58 L.Ed. 642; Werlein v. City of New Orleans, 177 U.S. 390, 20 S. Ct. 682, 44 L.Ed. 817; McGrew v. McGrew, 59 App.D.C. 230, 38 F.2d 541; Conn v. Ringer, 6 Cir., 32 F.2d 639; Sapulpa Pet. Co. v. McCray, 8 Cir., 4 F.2d 645, 650; Hickey v. Johnson, 8 Cir., 9 F. 2d 498; Staley v. Espenlaub, D.C.Kan., 36 F.2d 91; Id., 10 Cir., 43 F.2d 98; Ledbetter v. Wesley, 8 Cir., 23 F.2d 81, 86, 88; Shinkle v. Vickery, C.C.Ind., 117 F. 916; Little v. Smith, 47 Cal.App. 8, 189 P. 1059; State v. City of Cheney, 67 Wash. 151, 121 P. 48, 50.

[5] Graber v. Bontrager, 69 N.D. 300, 285 N.W. 865, 869; State ex rel. First Minneapolis Trust Co. v. Fosseen, 192 Minn. 108, 255 N.W. 816, 817, 94 A.L.R. 1149; In re Flewell, 201 Minn. 407, 276 N.W. 732, 733; In re Jeffers' Estate, 272 Mich. 127, 261 N.W. 271, 274; Kimball v. Kelly, 65 R.I. 484, 16 A.2d 491, 492; Kreichman v. Webster, 110 Vt. 105, 2 A.2d 199, 200; Pierce v. Johnson, 136 Ohio St. 95, 23 N. E.2d 993, 995, 125 A.L.R. 867.

[6] United States F. & G. Co. v. Centropolis Bank, 8 Cir., 17 F.2d 913, 916, 53 A. L.R. 295, and cases therein cited.

Claude Hobbs within the time limited by the New Mexico statute of nonclaim.

The New Mexico courts have not decided the precise question.[7]

Sec. 33-813, supra, provides for the filing of contingent claims, and § 33-803, supra, provides that all claims not filed in accordance with § 33-802, N.M.S.A.1941, shall be barred.

We are of the opinion that the claim here asserted is barred by the New Mexico statute of nonclaim.

The judgment is affirmed.

[7] See, however, Counts v. Woods, 46 N. M. 273, 127 P.2d 398, 399; In re Baeza's Estate, 41 N.M. 708, 73 P.2d 1351, 1353; Tierney v. Shakespeare, 34 N.M. 501, 505, 284 P. 1019.