156 P.3d 712 (2007)
2007-NMCA-042
Victoria GARCIA, Individually and as Personal Representative of the Estate of Patrick Garcia, Deceased, and as next of friend of Patrick Garcia and Diego Garcia, minors, Plaintiff-Appellant,
v.
UNDERWRITERS AT LLOYD'S LONDON, Legion Indemnity Company, Burns & Wilcox, Ltd., Copenhagen Re, Union American UAM, CNA Re, St. Paul Re Insurance Co., Odessey Re (London) Ltd., f/k/a Sphere Drake, and Insurance Exchange, Inc., Defendants-Appellees.
No. 25,985.
Court of Appeals of New Mexico.
January 26, 2007.
Certiorari Granted April 9, 2007.
*714 Robert Gorman, P.A., Robert Gorman, Law Offices of Robert J. McGuire, P.C., Robert J. McGuire, Cheryl Thompson, Albuquerque, NM, for Appellant.
Kenneth L. Harrigan, Zachary L. McCormick, Albuquerque, NM, for Appellees Underwriters at Llloyd's, London, and Burns & Wilcox, Ltd.
Paul A. Bleicher, Albuquerque, NM, for Appellee Insurance Exchange, Inc.
Certiorari Granted, No. 30,245. April 9, 2007.

OPINION
VIGIL, Judge.
{1} This appeal raises novel questions concerning liquor liability insurance coverage for a wrongful death claim filed against the estate of a decedent that is allowed in the probate proceeding, what constitutes a sufficient demand for a defense under the insurance policy, and the consequence to the insurance company if a defense to the claim is not provided in the probate proceeding. We conclude: (1) a wrongful death claim may properly be filed against the estate of a decedent in formal probate proceedings before the district court sitting in probate, (2) the liquor liability insurance policy at issue provided coverage for such a claim, (3) there are material issues of fact about whether a sufficient demand for a defense under the policy was made by the estate, and (4) policy defenses are not available to the insurer if the finder of fact determines that the estate made a demand for a defense under the policy. We therefore reverse the summary judgment granted to Underwriters at Lloyd's, London (Underwriters) and Burns & Wilcox, Ltd. We further conclude that Insurance Exchange, Inc. owed no contractual obligation to the estate and affirm the summary judgment granted in its favor.
BACKGROUND
{2} Standing in the shoes of the Perfetti Estate by virtue of an assignment of rights, Plaintiff sued Underwriters, Burns & Wilcox, and Insurance Exchange for breach of contract, bad faith, and violations of the Unfair Insurance Practices Act, NMSA 1978, §§ 59A-16-1 to -30 (1984, as amended through 2006) and Unfair Practices Act, NMSA 1978, §§ 57-12-1 to -16 (1967, as amended through 2005). The district court granted summary judgment in favor of Defendants, and Plaintiff appeals. While the summary judgment in favor of Underwriters and Burns & Wilcox disposed of all the claims brought against them, the summary judgment in favor of Insurance Exchange did not. However, the order was certified for an interlocutory appeal by the district court pursuant to NMSA 1978, § 39-3-4(A) (1999) (providing that the district court may certify that a non-final interlocutory order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order or decision may materially advance the ultimate termination of the litigation"), and we granted Plaintiff's application for an interlocutory appeal after construing Plaintiff's docketing statement as an application for interlocutory appeal. Section 39-3-4(B) (providing that appellate court may assume jurisdiction over an appeal of such an order). Therefore, both orders granting summary judgment are properly before us.
STANDARD OF REVIEW
{3} The case comes before us to review summary judgment granted in favor of Defendants. As such, our review is de novo. Farmington Police Officers Ass'n v. City of Farmington, 2006-NMCA-077, ¶ 13, 139 N.M. 750, 137 P.3d 1204; Barncastle v. Am. Nat'l Prop. & Cas. Cos., 2000-NMCA-095, ¶ 5, 129 N.M. 672, 11 P.3d 1234; Martin v. W. Am. Ins. Co., 1999-NMCA-158, ¶ 11, 128 N.M. 446, 993 P.2d 763. We engage in the same inquiry as the trial court, and consider the matters presented for and against summary judgment in the light most favorable to *715 Plaintiff. Gillin v. Carrows Rests., Inc., 118 N.M. 120, 122, 879 P.2d 121, 122 (Ct.App. 1994). We are mindful that summary judgment is a "drastic remedial tool which demands the exercise of caution in its application," Blauwkamp v. University of New Mexico Hospital, 114 N.M. 228, 231, 836 P.2d 1249, 1252 (Ct.App.1992), and that we review the record in the light most favorable to support a trial on the merits. Id.
FACTS
{4} On April 23, 1999, Patrick Garcia died when his vehicle was struck by a vehicle operated by Sally Padilla, who was leaving the Red Carpet Bar in Belen. Anthony Perfetti, the owner of the Red Carpet Bar, then died as a result of a different car accident on November 14, 1999, and a probate case was filed in the district court to administer his estate. His Personal Representative published a "Notice to Creditors" on December 2, 1999, stating that all persons having claims against the Perfetti Estate must "present their claims within two months . . . or the claims will be forever barred." Plaintiff (Victoria Garcia, individually, and as personal representative of the estate of Patrick Garcia, and as next friend of Patrick Garcia and Diego Garcia, minor children) filed a claim in the Perfetti probate case on January 5, 2000, alleging in pertinent part that Sally Padilla was served alcohol at the Red Carpet Bar when it was reasonably apparent that she was intoxicated and unable to safely operate an automobile, and that as a consequence, the accident occurred in which Patrick Garcia died. Plaintiff asserted that the Perfetti Estate was therefore liable to her for damages of not less than $3,000,000 for the wrongful death of Patrick Garcia. The Personal Representative failed to respond or otherwise take any action with regard to Plaintiff's claim. She also failed to file an inventory or otherwise account for the assets of the estate or to take any significant action to administer the Estate. See NMSA 1978, § 45-3-706(A) (1983) (requiring personal representative within three months of her appointment to prepare an inventory of property owned by the decedent at the time of his death, estimating the value of each listed item and the type and amount of any encumbrance that may exist with reference to each).
{5} The district court removed the Personal Representative on April 18, 2001, and simultaneously appointed a Special Administrator with limited powers to administer the Estate in a supervised administration, pending the appointment of a successor Personal Representative. See NMSA 1978, § 45-3-611 (1975) (setting forth grounds and procedure for terminating appointment of a personal representative); NMSA 1978, § 45-3-501(A) (1975) ("Supervised administration is a single in rem proceeding to secure complete administration and settlement of a decedent's estate under the continuing authority of the district court which extends until entry of an order approving distribution of the estate and discharging the personal representative or other order terminating the proceeding."). The Personal Representative was ordered to provide the Special Administrator with an accounting of all estate assets and to deliver all assets of the estate, including insurance policies, to the Special Administrator. In May 2001, counsel for the Personal Representative submitted a summary of the Estate assets and liabilities. He noted that Mr. Perfetti's records were far from perfect, and that the only known policy of insurance had been delivered to the Special Administrator's attorney, "and, to the best of our knowledge did not provide any dramshop or similar liability coverage. The policy covered only fire and matters of that sort." He also reported that any further information concerning insurance could be obtained from Insurance Exchange in Albuquerque.
{6} Plaintiff's attorney had been attempting to determine whether Mr. Perfetti had insurance covering the accident of April 23, 1999, in which Mr. Garcia died. Upon learning of the Insurance Exchange, he wrote it a letter on May 9, 2001, advising that he understood it had issued a policy for the Red Carpet Bar and requested a copy of the insurance policy and declarations page. The letter contained a summary of the April 23, 1999, accident and included a copy of the claim filed in the Perfetti Estate, adding that the claim was deemed admitted because it had not been denied by the Personal Representative. He requested the Insurance Exchange to "treat this letter as a claim under *716 the policy and [to] notify the company accordingly."
{7} Underwriters received actual notice of the claim through its attorneys on June 14, 2001. Upon receiving the claim, Insurance Exchange forwarded it to Burns & Wilcox, the agent for Underwriters, which in turn advised Underwriters' attorneys in New York of the claim. New York counsel then asked Insurance Exchange to send it a copy of Plaintiff's May 9, 2001, letter and enclosures, and counsel received them from Insurance Exchange on June 14, 2001.
{8} New York counsel wrote a letter to Underwriters on June 29, 2001, advising it of the details of the claim that was filed in the Perfetti Estate by Plaintiff, and that "Perfetti, the deceased owner of the insured, is considered an insured under the policy wording." The only defense to the claim noted in that letter is "to disclaim based on late notice," and that for such a defense to succeed, Underwriters would have to prove "substantial prejudice" based on late notice. The letter further advises that due to the removal of the Personal Representative for not complying with her duties and being replaced by a Special Administrator, "which by law has less authority in the handling of the probate" a late notice defense might well be complicated.
{9} New York counsel also wrote a letter to the Special Administrator of the Perfetti Estate in care of her attorney on that same day advising, "We have accepted notice of the captioned matter on behalf of Underwriters pursuant to the terms and conditions of [the policy] issued to Red Carpet Bar for the June 8, 1998-June 8, 1999 policy period." The Special Administrator was further advised: "Based on our receipt of late notice, Underwriters reserve the right to disclaim coverage for this matter at a later date should it be found that the late notice has resulted in prejudice to Underwriters." No other reservation of rights was asserted. Nevertheless, Underwriters' counsel recommended that the Special Administrator notify Plaintiff it was disallowing the claim "in accordance with New Mexico's probate statutes" and that her failure to do so could result in prejudice to Underwriters, thereby affecting the Perfetti Estate rights under the policy. Counsel concluded by requesting a copy of the "Notice of Disallowance." Counsel for Underwriters wrote another letter to the Special Administrator of the Perfetti Estate in care of her counsel on August 14, 2001, stating he had not yet received a copy of the "Notice of Disallowance" and again recommended that such a notice be given to Plaintiff and a copy provided to Underwriters. New York counsel made a September 21, 2001, note of a telephone conversation with the Special Administrator's attorney concerning this issue. He notes:
I phoned [counsel for the Special Administrator] to discuss whether the claim had been denied. He advised that he had just written a letter to me that he would be mailing shortly. He opines that the Special Administrator does not have the power to deny the claim. He believes that the denial must come from the probate judge.
{10} Following this conversation, New York counsel wrote to Underwriters a letter dated September 25, 2001, to report on the status of the matter. In pertinent part, counsel told Underwriters:
After examining the New Mexico's probate statutes and caselaw, we have concluded that no action needs to be taken by Underwriters in the probate proceedings. The New Mexico Supreme Court has previously held that the probate court does not have jurisdiction to entertain tort claims; thus, any determination by the probate court has no bearing on the merits of the Garcia claim. As a result, the Garcia Estate must file suit against either the Red Carpet Bar or the Perfetti Estate before Underwriter's duty to defend is triggered.
{11} On September 28, 2001, Underwriters' New York counsel received a letter from the Special Administrator's attorney concerning their telephone conversation of September 21, 2001. In pertinent part, the letter states:
I have discussed your concerns with the Special Administrator[.] The Special Administrator is not in a position at this point, to defend against any claim that may be asserted against the Estate. [The] *717 Special Administrator does not have the statutory authority that a Personal Representative has to deny claims. The Court has the authority in a formal administration such as this to determine the validity of any claim. I am not aware of any request for hearing submitted by any of the claimants to have their claims determined by the court.
Should your client want to pursue a motion for the court to deny the wrongful death claim asserted, then you may want to proceed with such as an interested party, independently of the Special Administrator.
{12} The Perfetti Estate was thereafter administered under the direction of the district court for the assets to be collected and claims paid. In the final order filed on September 16, 2002, the district court in pertinent part "ORDERED, ADJUDGED AND DECREED" that "[Plaintiff] Victoria Garcia individually, as personal representative and as next friend for her children, is allowed a three million dollar ($3,000,000) unsecured liquidated claim against this estate." The Perfetti Estate did not have sufficient assets to pay this claim after payment to the secured creditors and costs of administration. The district court then filed a "Stipulated Order Approving Assignment of Insurance Policies and Claims" which in pertinent part recites:
[Plaintiff] submitted a claim against this estate ("the Estate"), in an amount not less than $3,000,000. The claim against the Estate has been . . . allowed as a valid unsecured claim in the amount of $3,000,000. The claim appears to be covered by various liability insurance policies. Although the insurance companies and agents have been notified of the claim, they have failed to respond. The Special Administrator has agreed to assign and convey the Estate's rights arising from the subject policies to the claimant, so that she may pursue the claims directly against the insurance companies.
The Special Administrator was therefore authorized by the district court to assign to Plaintiff all of the Perfetti Estate's right, title and interest in and to insurance policies that provide or may provide coverage for the claim, "including any claims for failure to defend and bad faith" to Plaintiff. Plaintiff received the assignment and filed this action.
DISCUSSION
A. Claims Against Underwriters and Burns & Wilcox
I. Insurance Coverage for the Probate Claim
{13} Underwriters contends that filing the wrongful death claim in the Perfetti Estate did not trigger coverage under the insurance policy. We disagree.
{14} Resolution of this issue requires us to construe statutes in the Probate Code, and our review is de novo. In re Estate of Baca, 1999-NMCA-082, ¶ 12, 127 N.M. 535, 984 P.2d 782 (construing statutory time limitations contained in the Probate Code and stating that appellate review is de novo because the interpretation of statutory language is a matter of law). We are also required to construe the insurance policy. City of Santa Rosa v. Twin City Fire Ins. Co., 2006-NMCA-118, ¶ 7, 140 N.M. 434, 143 P.3d 196, describes our standard of review as follows:
We review the interpretation of an insurance policy de novo. When the terms used have a common and ordinary meaning, that meaning controls in determining the intent of the parties. Insurance contracts are not interpreted based on a subjective view of the coverage, but on the objective expectations the language of the policy would create in the mind of a hypothetical reasonable insured. In determining whether an insurance policy provision is ambiguous, we consider whether the language is susceptible to more than one meaning, whether the structure of the contract is illogical, and whether a particular matter of coverage is not explicitly addressed by the policy. We will not create ambiguity where none exists, and an ambiguity does not exist merely because the parties hold competing interpretations. When a policy contains clear and unambiguous language, the duty of the reviewing court is to enforce that language as written *718 as an expression of the intent of the parties.
(internal quotation marks, citations, and brackets omitted).
A. The New Mexico Probate Code
{15} We begin our analysis by examining the applicable provisions of the Probate Code. The Probate Code was adopted in 1975.1975 N.M. Laws ch. 257, § 1-102. Pursuant to NMSA 1978, § 45-1-102(A) (1975) we are required to liberally construe and apply its provisions "to promote its underlying purposes and policies." Those "purposes and policies" are set forth in four subsections of Section 45-1-102(B), two of which are pertinent to our decision in this case: "(1) to simplify and clarify certain laws concerning the affairs of decedents[;]" and "(3) to promote a speedy and efficient system for the settlement of the estate of the decedent." Our analysis is grounded on advancing and promoting these purposes and policies.
{16} We begin with what a "claim" is under the Probate Code. NMSA 1978, Section 45-1-201(A)(6) (1995) states:
"claims", in respect to estates of decedents and protected persons, includes liabilities of the decedent or protected person, whether arising in contract, in tort or otherwise and liabilities of the estate that arise at or after the death of the decedent or after the appointment of a conservator, including funeral expenses and expenses of administration. "Claims" does not include estate or inheritance taxes or demands or disputes regarding title of a decedent, an incapacitated person or a minor ward to specific assets alleged to be included in the estate[.]
(Emphasis added.) Plaintiff's "claim" for wrongful death against the Perfetti Estate falls within the literal terms of this definition. See Wolder v. Rahm, 249 N.W.2d 630, 631-32 (Iowa 1977) (recognizing that a claimant with a medical malpractice claim against the decedent had the option of either filing a claim in the probate case or filing a separate tort action against the estate, and holding that when the claim was filed in the decedent's estate and rejected, but the claimant did not request a hearing to contest rejection of the claim pursuant to the probate statute, her subsequent common law tort action was properly dismissed because under the probate statute her claim was "forever barred"); In re Estate of Rice v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago, 96 Ill.App.3d 1137, 52 Ill.Dec. 171, 421 N.E.2d 1034, 1037 (1981) (holding that a division of the circuit court sitting in probate may entertain a tort claim not yet adjudicated under a statute which provides that a claim against the estate of a decedent "whether based on contract, tort or otherwise" may be filed in the proceeding for the administration of the estate (internal quotation marks omitted)); Brown v. Monticello State Bank, 360 N.W.2d 81, 84 (Iowa 1984) (holding district court in tort action correctly used issue preclusion to prohibit the relitigation of claims made and rejected in prior probate proceedings).
{17} Therefore, when the Personal Representative published the "Notice to Creditors" requiring all creditors of the Estate to present their claims to the Personal Representative within two months on December 2, 1999, Plaintiff acted properly in filing its wrongful death claim in the Perfetti Estate on January 5, 2000. NMSA 1978, § 45-3-801(B) (1993) ("A personal representative . . . may . . . publish a notice to creditors once a week for two successive weeks in a newspaper of general circulation . . . notifying creditors of the estate to present their claims within two months after the date of the first publication of the notice or be forever barred."); NMSA 1978, § 45-3-804(A) (1983) ("[T]he claimant may deliver or mail to the personal representative a written statement of the claim indicating its basis, the name and address of the claimant and the amount claimed, or he may file a written statement of the claim with the appropriate court. . . . If the claim is contingent or unliquidated, the nature of the uncertainty shall be stated."). The personal representative may either disallow the claim or approve it by simply failing to take action on it. NMSA 1978, § 45-3-806(A)(1993). "Failure of the personal representative to mail notice to a claimant of action on his claim for sixty days after the time for original presentation of the claim has expired has the effect of a notice of allowance [of the claim]." Id.
*719 {18} If the personal representative had denied Plaintiff's wrongful death claim in whole or in part, provisions of the Probate Code provide for its adjudication. The claim "is barred so far as not allowed unless the claimant files a petition for allowance in the district court or commences a proceeding against the personal representative not later than sixty days after the mailing of the notice of disallowance or partial disallowance." Id.
Upon the petition of the personal representative or of a claimant in a proceeding for the purpose, the district court may allow in whole or in part any claim presented to the personal representative or filed with the clerk of the district court in due time and not barred by Subsection A of this section. Notice in this proceeding shall be given to the claimant, the personal representative and those other persons interested in the estate, as the court may direct by order entered at the time the proceeding is commenced.
Section 45-3-806(C). In the proceeding to determine whether and to what extent to allow Plaintiff's wrongful death claim against the estate, the Rules of Civil Procedure apply, NMSA 1978, Section 45-1-304 (1978), and if timely demanded, a jury is empaneled to decide the disputed issues of fact. NMSA 1978, § 45-1-306 (1975) ("If demanded, in the manner provided by the Rules of Civil Procedure, a party is entitled to a trial by jury in a formal testacy proceeding and in any proceeding in which any controverted question of fact arises as to which any party has a constitutional right to trial by jury."). Such a procedure clearly promotes the speedy and efficient settlement of an estate: the district judge presiding over the estate can simultaneously preside over the resolution of any disputed claims to their conclusion and determine the order and priorities for the payment of all the claims and the subsequent closing of the estate.
{19} Pre-Probate Code cases hold that an order allowing a claim by a court with jurisdiction of the parties, jurisdiction of the subject matter, and authority to decide the particular claim presented has the same force and effect of a judgment. See Ross v. Lewis, 23 N.M. 524, 529, 169 P. 468, 470 (1917) ("`But it is most generally the rule that the allowance of claim against the estate of a decedent is a judicial act, and has all the force and effect of a judgment'." (internal quotation marks and citation omitted)); In re Field's Estate, 40 N.M. 423, 429, 60 P.2d 945, 949 (1936) ("an order of a probate court approving or classifying a claim is a final judgment; which, if not appealed from, has the same force and effect as that of a final judgment of courts generally"); Fid. & Deposit Co. of Md. v. Hobbs, 144 F.2d 5, 7 (10th Cir.1944) ("The allowance or rejection of a claim against the estate of a decedent is a judicial act, with the force and effect of a judgment, and it is final and conclusive between the parties, until set aside, and cannot be attacked collaterally." (citing Lewis, 23 N.M. at 529, 169 P. at 470)). We are unaware of any reasons why the same result should not apply to claims approved or rejected under the present Probate Code.
{20} The Probate Code did not limit Plaintiff to the foregoing procedures. She was also entitled to "commence a proceeding against the personal representative in any court where the personal representative may be subjected to jurisdiction, to obtain payment of [her] claim against the estate[.]" Section 45-3-804(B). Furthermore, while all claims that arose before the death of the decedent, "whether due or to become due, absolute or contingent, liquidated or unliquidated or founded on contract, tort or other legal basis" must generally be presented within one year after the decedent's death, NMSA 1978, Section 45-3-803(A)(1) (1993), this time limitation did not apply to Plaintiff's claim when it was discovered that it was covered by insurance, up to the limits of the insurance available. Section 45-3-803(D)(2) ("Nothing in this section [prescribing when claims must be presented] affects or prevents to the limits of the insurance protection only, any proceeding to establish liability of the decedent . . . for which he is protected by liability insurance."). If Plaintiff had chosen this course, and filed a separate wrongful death action against the Perfetti Estate and succeeded in obtaining a judgment, that judgment would have the same effect as an allowance of the claim. Section 45-3-806(D) ("A judgment in a proceeding in another *720 court against a personal representative to enforce a claim against a decedent's estate is an allowance of the claim."). The fact that Plaintiff had two alternatives to seek having her claim approved did not require her to pursue one or the other. See Wolder, 249 N.W.2d at 632-33 (stating that statutory scheme permitted filing a claim in the estate or filing a separate action against the personal representative).
B. The Insurance Policy
{21} The "Insuring Agreement" in pertinent part states:
We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result.
There is no dispute that the wrongful death claim seeks damages from an "insured" for an "injury" as defined in the policy by reason of the selling, serving, or furnishing of an alcoholic beverage. The question before us is whether the filing of a wrongful death claim in the Perfetti Estate constituted a "suit." The policy defines a "suit" as follows:
"Suit" means a civil proceeding in which damages because of "injury" to which this insurance applies are alleged. "Suit" includes:
a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.
{22} In In re Estate of Harrington, 2000-NMCA-058, ¶ 14, 129 N.M. 266, 5 P.3d 1070, we considered whether the district court, sitting in probate, had subject matter jurisdiction to order the liquidation of a business. We carefully reviewed pertinent provisions of the Probate Code, its purposes, and policies, id. ¶¶ 14-20, and concluded, "[T]he Legislature intended to confer upon district courts general civil jurisdiction in formal probate proceedings[.]" Id. ¶ 17. The Order appointing the Special Administrator was made by the district court in a formal proceeding. Therefore, the district court, sitting in probate over the Perfetti Estate had general civil jurisdiction, with full power to make all orders, judgments, and decrees and take all other action that was necessary and proper to adjudicate the wrongful death claim that was before it. Thus, when Plaintiff filed the wrongful death claim in the Perfetti Estate, they initiated a "proceeding in which damages because of `injury' to which [the] insurance applies [were] alleged."
{23} We therefore hold that filing of the wrongful death claim in the Perfetti Estate resulted in a "suit" within the meaning of the Underwriters insurance contract, which triggered Underwriters' duty to defend as stated in the "Insuring Agreement."
II. Demand for a Defense
{24} Underwriters argues that it had no duty to defend because the undisputed material facts demonstrate that the Perfetti Estate never requested a defense under its policy. In fact, Underwriters asserts, the undisputed material facts demonstrate that the Perfetti Estate affirmatively elected not to make a claim under the policy and it did not understand the wrongful death claim to trigger coverage. After considering the evidence tendered in the summary judgment pleadings in the light most favorable to support a trial on the merits, we disagree.
{25} Some courts require a specific event to trigger the duty to defend, such as a written demand or transmittal of the complaint from the insured. Other courts hold that an insurer's duty to defend is triggered when it has actual notice of a claim against the insured. See 14 Lee R. Russ and Thomas F. Segalla, Couch on Insurance § 200:28 (3d ed.2006) (collecting cases). We are persuaded *721 that the better rule is that while actual notice presumptively triggers a duty to defend, a jury may nevertheless find, when warranted by the facts, that the insured knowingly declined a defense, and the duty to defend was therefore not breached. We find support for this rule in Cincinnati Cos. v. West American Insurance Co., 183 Ill.2d 317, 233 Ill.Dec. 649, 701 N.E.2d 499 (1998).
{26} In Cincinnati Cos., the court affirmed a judgment against an insurer for failure to provide a defense to an entity named as an additional insured in the applicable policy. Id. at 500-01. The insurer had refused to defend even though it knew all about the suit from its inception and had provided a defense to its named insured. Id. at 500. In determining when the duty to defend was triggered, the court held that "where the insured has not knowingly decided against an insurer's involvement, the insurer's duty to defend is triggered by actual notice of the underlying suit, regardless of the level of the insured's sophistication." Id. at 505. The court defined actual notice as "notice sufficient to permit the insurer to locate and defend the lawsuit." Id. (internal quotation marks and citation omitted). The court went on to state that an insurer would have sufficient notice if "the insurer . . . know[s] both that a cause of action has been filed and that the complaint falls within or potentially within the scope of the coverage of one of its policies." Id. The court gave several reasons in support of its holding, including: (1) "the insurer is usually in a better position than even a sophisticated insured to know the scope of the insurance contract and its duties under it," id. at 504-05; and (2) "allowing actual notice to trigger the duty to defend . . . assure[s] or protect[s] the benefits of the insurance contract" because "[t]he insurer, having received consideration for inclusion of the insured on its policy, should not be allowed to evade its responsibilities under the policy as a result of the insured's ignorance." Id. at 505.
{27} We believe permitting actual notice to constitute a demand fairly balances the interests of insured and insurer under the insurance contract, and New Mexico law is consistent with this rule. Although we have previously stated that "before the duty to defend arises there must be a demand[,]" State Farm Fire & Casualty Co. v. Price, 101 N.M. 438, 443, 684 P.2d 524, 529 (Ct.App. 1984), New Mexico's appellate courts have never attributed any particular formality to the concept of a "demand." Indeed, in Price, we held that reasonable minds could differ on whether two letters written by the insured could support a finding that a defense had been demanded, and reversed a directed verdict in favor of State Farm. Id. at 444, 684 P.2d at 530. The first letter, "while not expressly demanding that [the insurer] defend, states that [the insured] was being sued, and the caption and number of the lawsuit." Id. The second letter advised the insurer that settlement of the underlying suit was possible, and that settlement was recommended. Id. at 443-44, 684 P.2d at 529-30. We said:
[The evidence could] support a conclusion that [the insurer] knew of the lawsuit and knew of the possibility of settlement, yet consciously disregarded what was happening. It is true that no suit papers were forwarded to [the insurer] and that notice of the impending settlement could have been more clearly given. However, under the circumstances reasonable minds could differ about whether there was a sufficient demand to defend on [the insurer], about [the insurer's] good faith, and about the insured's conduct. These are properly issues for the jury.
Id. at 444, 684 P.2d at 530. Price thus determined that under the facts of that case, the notice given to the insurer was sufficient to constitute a demand for a defense.
{28} Applying Price to this case, and viewing the evidence and its inferences in the light most favorable to a trial on the merits, we conclude that an issue of fact exists. It is clear that notice was received by Underwriters. The question remains, however, whether, under the facts of this case, a defense was demanded.
{29} With respect to the question of notice, Plaintiff's attorney first learned about insurance coverage approximately seventeen months after he filed the claim in the probate *722 case, and promptly notified Insurance Exchange on May 9, 2001, enclosing a copy of the claim. Underwriters' attorneys received the claim from Insurance Exchange about a month later, and advised the Special Administrator of Perfetti's Estate, "[w]e have accepted notice of the captioned matter." There is no question that Underwriters knew "both that a cause of action ha[d] been filed and that the complaint [fell] within or potentially within the scope of the coverage of . . . its polic[y]." Cincinnati Cos., 233 Ill.Dec. 649, 701 N.E.2d at 505.
{30} Underwriters argues that the Perfetti Estate knowingly chose to forego a defense from Underwriters. It points to an ambiguous letter from the Special Administrator's attorney, which could be read either as a rejection of a defense by Underwriters or as a statement of the attorney's views on the limitations of the Special Administrator's duties with no bearing on the duty to defend. See Towne Realty, Inc. v. Zurich Ins. Co., 201 Wis.2d 260, 548 N.W.2d 64, 67 (1996) (concluding that a letter written to the insurer was at best ambiguous and could "easily" be read as a request that the insurer assume the defense of the action, notwithstanding that the letter said it was not being submitted as a claim). In addition, Underwriters submitted the affidavits of the Special Administrator and her attorney, both of which suggest that the Perfetti Estate did not want Underwriters to provide a defense. Again, it is for the fact finder to make the ultimate determination of this issue. See Leonard v. Dixie Well Serv. & Supply, Inc., 828 F.2d 291, 294 (5th Cir.1987) (holding that summary judgment is improper when the documents and affidavit testimony conflict with one another because credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge acting on a motion for summary judgment); Dona Ana Sav. & Loan Ass'n. v. Dofflemeyer, 115 N.M. 590, 593-94, 855 P.2d 1054, 1057-58 (1993) (concluding that the defendant's stated intention was not determinative and whether he actually acted with the requisite intent presented a genuine issue of material fact); Maxey v. Quintana, 84 N.M. 38, 42, 499 P.2d 356, 360 (Ct.App.1972) (stating that intent is a question for the jury where its determination depends on the credibility of the witnesses and that the summary judgment record concerning the circumstances of the dealings between the parties presented a factual issue for trial).
{31} We believe sound policy considerations support a rule tying the duty to defend to actual notice of a claim. As explained by the court in Cincinnati Cos., the insurer is in the best position to know and understand policy coverage and duties. 233 Ill.Dec. 649, 701 N.E.2d at 504-05. In addition, the insured should receive the benefit of the premiums paid to obtain the insurer's promise to defend against covered claims. See id. at 505. While we recognize that insurers may fear that this rule will impose some kind of automatic duty to become involved in litigation, we think this fear is unfounded. When actual notice is given to an insurer, the insurer may protect its interests "simply by contacting the insured to ascertain whether the insurer's assistance is desired. If the insured indicates that it does not want the insurer's assistance, or is unresponsive or uncooperative, the insurer is relieved of its duty to defend." Id. at 504. We conclude that the policy of encouraging insurers to perform their contractual obligations outweighs any requirement that allows insurers to default on their obligation to defend simply because the insured did not formally ask the insurer to do what the insurance contract already requires. See Johnson Controls, Inc. v. Employer's Ins. of Wausau, 2003-WI-108, ¶ 85, 665 N.W.2d 257 (stating that an actual notice trigger discourages the insurer from defaulting in the performance of its duty to defend); Home Ins. Co. v. Nat'l Union Fire Ins. of Pittsburgh, 658 N.W.2d 522, 533 (Minn.2003) (concluding that public policy discourages giving the insurer an opportunity to negate the insurance contract due to the insured's ignorance of what language must be used to invoke coverage).
{32} We reject Underwriters' argument that notice of a claim must be given by the insured. See LaGrange Mem'l Hosp. v. St. Paul Ins. Co., 317 Ill.App.3d 863, 251 Ill.Dec. 191, 740 N.E.2d 21, 28 (2000) (stating *723 that the duty to defend is triggered by actual notice of the suit and that actual notice exists where the insurer receives that notice from any source); Illinois Founders Ins. Co. v. Barnett, 304 Ill.App.3d 602, 237 Ill.Dec. 605, 710 N.E.2d 28, 32 (1999) (stating that the issue of whether the insurer received actual notice of the suit is a question of fact, and "actual notice can arise from a letter or phone call to the insurer from an injured party or an attorney asserting a claim under the insurance policy"). Underwriters had actual notice of the claim which presumptively triggered its duty to defend. The key inquiry in this case, however, is whether under all the circumstances, including the correspondence exchanged between the Perfetti Estate and Underwriters, the Perfetti Estate was foregoing a defense from Underwriters. Because this inquiry is fact-specific and dependent on the jury's interpretation of an ambiguous letter, summary judgment was not properly granted.
III. Violations of Policy Conditions
{33} Underwriters asserts that the Perfetti Estate violated several policy conditions, precluding the Plaintiff, as its assignee, from asserting coverage. Underwriters states that the Perfetti Estate violated its duties to: (1) provide notice of the injury "as soon as practicable"; (2) send written notice of the claim or suit as soon as practicable; (3) disallow the claim; and (4) cooperate with Underwriters in the investigation, defense, and settlement of the claim.
{34} In Price, we said that an insurer that fails to defend after a demand "suffers serious consequences" including "loss of the right to claim that the insured breached policy provisions." 101 N.M. at 445, 684 P.2d at 531; see also Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co., 110 N.M. 741, 746, 799 P.2d 1113, 1119 (1990) (stating same proposition as Price). The basis is that the insurer cannot establish substantial prejudice as a result of the insured's breach of the policy provisions when its failure to defend is unjustified because the claim comes within policy coverage and a demand for coverage has been made. Price, 101 N.M. at 444, 684 P.2d at 530; see Jones v. Fla. Ins. Guar. Ass'n, Inc., 908 So.2d 435, 452-53 (Fla.2005) (per curiam) (concluding that where insurer had all information and simply made the unilateral decision that it would not defend the insured, asserted defense of failure to cooperate failed because insurer could not establish prejudice).
{35} The fact of the matter is that Underwriters unilaterally made a decision that it was not required to take any action in the probate proceedings because it believed that there was no jurisdiction in the probate court to hear a tort claim and therefore any determination made in the probate court would have "no bearing on the merits." In this case, an order was ultimately entered by the district court in which it is "ORDERED, ADJUDGED AND DECREED" that Plaintiff was allowed an unsecured liquidated claim of three million dollars ($3,000,000). Thus, the crucial issues which must be decided are whether there was an unjustified failure to defend by Underwriters after demand by the Perfetti Estate. If the question is answered "no" then policy defenses may be applicable. On the other hand, if the answer is "yes" then Underwriters may not rely on any policy defenses.
B. Claims Against Insurance Exchange
{36} Plaintiff acknowledges that the claims against Insurance Exchange that are before us all hinge on whether it had a contractual relationship with the Perfetti Estate. The affidavit of an Insurance Exchange employee demonstrates that Insurance Exchange had no contract at any time with any of the other defendants named in this action under which Insurance Exchange, Inc. was an agent for any of those defendants. In addition, Insurance Exchange is not an insurer, and it only "acted as an agent of Mr. Perfetti for the sole purpose of submitting applications for coverage under contracts of insurance with insurers." Furthermore, Insurance Exchange does not appear anywhere in the insurance policy and Plaintiff does not cite to any portion of the record suggesting that Insurance Exchange was a party to the insurance contract or that an insured could reasonably conclude that Insurance Exchange is an agent for the Underwriters. *724 We therefore conclude that summary judgment was properly granted to Insurance Exchange.
CONCLUSION
{37} For the reasons stated herein, the summary judgment granted to Underwriters and Burns & Wilcox is reversed, and the summary judgment granted to Insurance Exchange is affirmed.
{38} IT IS SO ORDERED.
WE CONCUR: CYNTHIA A. FRY, Judge.
JAMES J. WECHSLER, Judge (specially concurring).
WECHSLER, Judge (specially concurring).
{39} Although I join in the result of the majority opinion, I write separately to express my belief that this case presents no occasion to deviate from Price. The majority states that it adopts a rule that is consistent with New Mexico law. But the majority rule renders meaningless the statement in Price that "before the duty to defend arises there must be a demand." Price, 101 N.M. at 443, 684 P.2d at 529. I agree with the majority's conclusions that the evidence in this case was ambiguous and that actual notice may sometimes be sufficient to trigger the duty to defend. But I disagree with the majority's choice to institute a presumption that actual notice triggers the duty to defend.
{40} In Price, we determined that "reasonable minds could differ about whether a demand was made" when the attorney for the insured wrote two letters to the insurance company, neither of which made an explicit request for a defense. Instead, the first letter "state[d] that [the insured] was being sued, and the caption and number of the lawsuit." Id. The second letter requested that the insurance company accept an offer of settlement. Id. at 444, 684 P.2d at 530. We held that this evidence, together with an ambiguous memo, "can support a conclusion that State Farm knew of the lawsuit and knew of the possibility of settlement, yet consciously disregarded what was happening." Id. We then noted that because reasonable minds could differ about whether a demand had been made, that question should have been decided by the jury. Id. Thus, in Price, we found that a jury could conclude that a demand had been made when the insurance company had received little more than actual notice.
{41} I agree with the current state of the law as expressed in Price. The question should be "whether there was a sufficient demand to defend." Id. I would follow Price in this case and allow the jury to make that determination. The ultimate inquiry should be whether Underwriters was placed on sufficient notice that a demand had been requested. I agree with the rule in Price that no particular magic words are required. Instead, the jury should determine whether, under the specific facts of the case, a demand for a defense was communicated to the insurance company.
{42} While the majority claims to follow existing New Mexico law, its holding on this issue actually disregards Price. The majority does not require that the insured demand a defense. Although it states, and I agree, that actual notice may constitute a demand, it holds that actual notice presumptively triggers the duty to defend. It requires only that the insurer receive actual notice, from any source, and in any manner. The question for the majority then becomes whether the insured "knowingly declined a defense." In other words, the majority has shifted the test from one in which the insured must demand a defense to one in which the insured must merely fail to decline a defense.
{43} The significance of the majority opinion becomes clear when its holding is compared to the rule in Price. In Price, we stated that "whether there was a sufficient demand to defend" was a question for the jury. But, by holding that actual notice presumptively triggers a duty to defend, it appears that the majority would find a sufficient demand as a matter of law whenever the insurance company receives actual notice. The majority holds that this case should go to the jury not to determine whether a demand has been made, but to determine whether "the Perfetti Estate was foregoing a defense from Underwriters." At the summary *725 judgment stage, the practical difference is that, under the majority's rule, if the insured can prove actual notice, summary judgment may be granted unless the insurance company submits evidence showing that the insured intended to decline a defense. Under Price, summary judgment should not be granted based on actual notice alone; instead, the jury would determine whether that notice constituted a demand.
{44} I agree with the majority that the insurance company is in a better position to shoulder the burden of determining whether a defense has been requested. But the majority goes farther than necessary. I would not deviate from existing law when, as here, it provides a workable solution and would not change the result. See Padilla v. State Farm Mut. Auto. Ins. Co., 2003-NMSC-011, ¶ 7, 133 N.M. 661, 68 P.3d 901 (stating that stare decisis "lies at the very core of the judicial process" and that we must consider several questions, including "whether the precedent is so unworkable as to be intolerable" before overturning precedent) (internal quotation marks and citations omitted); Trujillo v. City of Albuquerque, 1998-NMSC-031, ¶¶ 33-35, 125 N.M. 721, 965 P.2d 305 (expressing the importance of stare decisis and also noting that stare decisis is more compelling in cases involving contracts).
{45} For the reasons stated, I concur only in the result.